FILED
COURT OF APPEALS
DIVISION II

2014 JAN 28 AM 9:51

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| UNITED SERVICES AUTOMOBILE ASSOCIATION, | No. 43728-7-II |
| Respondent, | |
| v. | PUBLISHED OPINION |
| ROBERT J. SPEED, | |
| Appellant. | |

MAXA, J. – Robert Speed appeals the trial court's summary judgment dismissal of his duty to defend, duty to explore settlement and bad faith claims against United Services Automobile Association (USAA) arising from Speed's allegation that a USAA insured had deliberately assaulted him in a road rage incident. Speed had filed suit against USAA as the assignee of the insured following entry of a stipulated judgment. We hold that (1) USAA had no duty to defend Speed's claim under either his homeowners or auto insurance policies because the claim did not allege an "accident" as required for coverage under the policies, (2) USAA's "uncertainty" whether to provide a defense did not create a duty to defend when the unambiguous claim allegations did not trigger such a duty, (3) in the absence of a duty to defend USAA had no duty to explore settlement, and (4) the trial court properly denied Speed's bad faith claims. Accordingly, we affirm.

No. 43728-7-II

FACTS

*Speed's Claim*

On March 2, 2009, Dennis Geyer and Speed were involved in an altercation and Speed suffered serious personal injuries. The State charged Geyer with second degree assault with a deadly weapon. On August 25, 2009, Speed's attorney sent a demand letter to Geyer seeking $650,000 to compensate Speed for his injuries. The letter described the incident as follows:

> On March 2, 2009, Mr. Speed and Dr. Geyer[1] were operating their motor vehicles in the vicinity of the Tacoma Narrows Bridge. Dr. Geyer apparently became angry over something Mr. Speed had done while driving in front of him. Once they were on the bridge, Dr. Geyer pulled along side [sic] Mr. Speed and motioned for him to pull over. Frightened, Mr. Speed took the first exit after the bridge. Dr. Geyer followed Mr. Speed for an extended period of time before the two vehicles stopped for a traffic signal. According to witnesses, Dr. Geyer got out of his vehicle, opened the door of Mr. Speed's vehicle and beat Mr. Speed with his fists and a metal thermos, pulling Mr. Speed from his vehicle as he did so. Dr. Geyer then drove away from the scene leaving Mr. Speed bleeding and unconscious in the street.

Clerk's Papers (CP) at 56-57. The letter stated that "[t]his case is aggravated by the intentional conduct of Dr. Geyer, including leaving Mr. Speed, potentially for dead, at the scene" and that "[w]ere this a case of negligence that was covered by insurance" Speed's attorneys would be seeking a seven-figure verdict or settlement. CP at 61. The letter further stated that if Geyer agreed to pay the requested amount, Speed and his attorneys would recommend to the prosecutor that Geyer be allowed to plead guilty to a misdemeanor assault charge.

Geyer carried homeowners and auto insurance with USAA. On October 14, 2009, seven months after the incident, Geyer notified USAA of the incident and Speed's claim. He requested coverage under both policies. By that date, the settlement offer in Speed's demand letter, by its

---

[1] Dennis Geyer is a physician and he is often referred to in the record as "Dr. Geyer."

2

terms, already had been revoked. A USAA adjuster interviewed Geyer the next day, and Geyer's statements suggested that he was claiming self-defense.

*USAA's Reservation of Rights and Investigation*

In a letter dated October 19, 2009, USAA informed Geyer that "[t]he current facts of this incident give rise to potential coverage issues under both your automobile and homeowner's policies" and that it was investigating his claim under a reservation of its right to deny coverage. CP at 210. With regard to the homeowners policy, the letter stated that the incident facts indicated that Speed's injuries may not have been the result of an "occurrence" as defined in the policy because Speed alleged that Geyer had intentionally and deliberately struck him in the head. The letter also stated that the policy may not provide coverage because of the intentional act exclusion. With regard to the auto policy, the letter stated that Speed's claim might not be the result of an "auto accident" as defined in the policy and that the policy may not provide coverage under the intentional act exclusion. CP at 213-14.

USAA did not retain counsel to defend Geyer at this time and did not advise Geyer whether or not it believed that it had a duty to defend Speed's claim. USAA apparently assumed that it had no duty to defend until a lawsuit was filed. However, USAA did undertake a liability and coverage investigation regarding Speed's claim. USAA also informed Speed's attorney that it had received notice of the claim and that "[a]ny pending claim(s) is unresolved because we continue to investigate coverage and liability in this matter." CP at 566.

USAA continued to monitor and investigate Speed's claim for the next several months. The trial on Geyer's criminal charges occurred in February 2010. Geyer admitted that he had deliberately hit Speed, but claimed he was acting in self-defense. A jury found Geyer guilty of third degree assault. Following the verdict, USAA obtained a coverage opinion from an

3

attorney. In a May 5 letter, the attorney concluded that USAA should not have a duty to defend or provide indemnity for Speed's claim, but that the "safest course of action" would be to provide a defense under a reservation of rights. CP at 620.

*Settlement Negotiations*

On April 13, 2010, Speed offered to release Geyer from all claims if USAA would agree to pay the combined policy limits under Geyer's homeowners and auto insurance policies, totaling $800,000. In a May 10, 2010, letter, USAA explained to Geyer why it would not pay the demand. USAA stated that it was unlikely that it had a duty to indemnify Geyer because Speed's injuries were not caused by an accident or an auto accident and the policies excluded coverage for an intentional or purposeful act. However, the letter also stated:

> Although USAA is rejecting the demand, neither the rejection nor this letter should be read as a final denial of all policy benefits which might be available to you. Our previous letter of October 19, 2009, informed you that coverage is questionable. Since that date, we have received and reviewed the criminal trial transcripts, and coverage is still questionable.

CP at 81. USAA ultimately did make a $25,000 settlement offer, which Speed rejected.

On January 20, 2011, Geyer and Speed agreed to a settlement. Geyer stipulated to the entry of a $1.4 million judgment in exchange for Speed's covenant not to execute the judgment against Geyer's assets. Geyer also assigned all his potential breach of contract and bad faith claims against USAA to Speed.

*Litigation*

On January 24, 2011, USAA filed a complaint for declaratory judgment against Speed, seeking a declaration that it had no duty to defend or indemnify Geyer for the claim, was not estopped from denying coverage, and had no duty to pay the $1.4 million stipulated judgment. Speed counterclaimed, alleging that USAA acted in bad faith in failing to defend, properly

4

investigate or settle the Speed claim and that USAA violated the Insurance Fair Conduct Act (IFCA), chapter 48.30 RCW, and the Unfair Claims Settlement Practices Regulation, chapter 284-30 WAC.

On February 8, Speed filed a separate personal injury complaint against Geyer, alleging that Geyer had negligently caused Speed's injuries. However, the only relief requested was a ruling that the settlement amount was reasonable. After Speed filed the complaint, USAA provided Geyer with a defense attorney. The trial court concluded that the settlement was reasonable.

The trial court consolidated Speed's personal injury suit and USAA's declaratory judgment action. Speed moved for partial summary judgment, asking the trial court to rule that USAA had a duty to defend Geyer upon receiving notice of Speed's personal injury claim and that USAA's failure to provide counsel to Geyer constituted bad faith. The trial court denied Speed's summary judgment motion, ruling that the issue of whether USAA had a duty to defend was "subordinate to the issue as to finding that there is policy coverage under the facts of this case." CP at 630.

USAA subsequently moved for partial summary judgment, asking the trial court to declare as a matter of law that (1) there was no coverage under either policy, (2) USAA had no duty to defend Geyer, (3) USAA's failure to defend was not in bad faith, and (4) USAA was not estopped from denying coverage. The trial court granted the motion and dismissed Speed's claims for bad faith failure to defend, settle, or indemnify. USAA then moved to dismiss Speed's statutory and regulatory bad faith claims. Speed did not oppose the motion and agreed that those claims were "inextricably tied to USAA's duties to defend, settle or indemnify which the Court has now dismissed with prejudice." CP at 947.

Speed appeals the trial court's orders denying his summary judgment motion, granting USAA's summary judgment motion, and granting USAA's motion to dismiss his remaining bad faith claims.

ANALYSIS

The trial court dismissed Speed's claims on summary judgment. We review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 52, 164 P.3d 454 (2007). In addition, the interpretation of an insurance policy generally is a question of law that we review de novo. *Woo*, 161 Wn.2d at 52.

A.     DUTY TO DEFEND

1.     Introduction

Most standard liability insurance policies impose upon the insurer two distinct duties: the duty to defend the insured against lawsuits or claims and the duty to indemnify the insured against any settlements or judgments. *See St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 129, 196 P.3d 664 (2008). Significantly, the duty to defend is different from and broader than the duty to indemnify. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). The duty to defend exists if the policy *conceivably* covers the claim allegations, while the duty to indemnify exists only if the policy *actually* covers the claim. *Am. Best Food*, 168 Wn.2d at 404. An insurer's duty to defend is "one of the principal benefits of the liability insurance policy." *Woo*, 161 Wn.2d at 54. "The entitlement to a defense may prove to be of greater benefit to the insured than indemnity." *Am. Best Food*, 168 Wn.2d at 405.

We generally examine only the allegations against the insured and the insurance policy provisions to determine whether the duty to defend is triggered. *See Woo,* 161 Wn.2d at 53-54; *Holly Mountain Res, Ltd. v. Westport Ins. Corp.*, 130 Wn. App. 635, 647, 104 P.3d 725 (2005),

6

*overruled on other grounds by Nat'l Sur. Corp. v. Immunex Corp.*, 176 Wn.2d 872, 297 P.3d 688 (2013). Therefore, whether a claim triggers a duty to defend is a question of law that we review de novo. *See Woo*, 161 Wn.2d at 52 (interpretation of insurance contract is question of law subject to de novo review). Based on a review of the allegations against the insured and the insurance policy provisions, the trial court – and this court on de novo review – must decide as a matter of law either that the insurer has a duty to defend or that no duty to defend exists. While the duty to indemnify may depend upon resolution of factual issues, there generally are no questions of fact for the duty to defend.

2.  Trigger of Duty To Defend

Most Washington cases recite that the insurer's duty to defend is triggered when a complaint is filed against the insured. *E.g.*, *Mut. of Enumclaw Ins. Co. v. USF Ins. Co.*, 164 Wn.2d 411, 420-21, 191 P.3d 866 (2008); *see also Woo*, 161 Wn.2d at 52 (duty to defend arises when an "action" is brought). The cases reference a "complaint " because most standard policies only require the insurer to defend a "suit " against the insured. *See Weyerhaeuser Co. v. Aetna Cas. & Sur. Co.*, 123 Wn.2d 891, 902, 874 P.2d 142 (1994).

However, in this case USAA's homeowners and auto policies both provided that USAA's duty to defend arose not only when a "suit" was brought against the insured, but also when any "claim" was made for damages arising from acts covered under the policies. USAA argued below that its duty to defend arose only when Speed filed a lawsuit, but concedes on appeal that the language in these policies triggered a duty to defend when Speed asserted a claim. Accordingly, here any duty to defend was triggered when Speed sent his demand letter to Geyer, and the duty to defend is based on the allegations in that letter.

3.  Scope of Duty To Defend

Our Supreme Court repeatedly has confirmed that insurers have a broad duty to defend. *E.g.*, *Am. Best Food*, 168 Wn.2d at 404; *Woo*, 161 Wn.2d at 52-54. These cases have emphasized the following rules:

1. The duty to defend generally " ' must be determined only from the complaint.' " *Woo*, 161 Wn.2d at 53 (quoting *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 761, 58 P.3d 276 (2002)). The insurer cannot rely on facts extrinsic to the complaint to deny a duty to defend. *Woo*, 161 Wn.2d at 54.

2. A duty to defend exists if the facts alleged in the complaint against the insured, if proven, would trigger coverage under the policy. *Am. Best Food*, 168 Wn.2d at 404.

3. If the complaint is ambiguous, it must be construed liberally in favor of triggering a duty to defend. *Woo*, 161 Wn.2d at 53.

4. The duty to defend is based on the *potential* for coverage. *Woo*, 161 Wn.2d at 52-53. The duty is triggered if the insurance policy *conceivably* covers the allegations in the complaint. *Am. Best Food*, 168 Wn.2d at 404.

5. The insured must be given the benefit of the doubt and a duty to defend will be found unless it is clear from the face of the complaint that the policy does not provide coverage. *Woo*, 161 Wn.2d at 64.

6. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food*, 168 Wn.2d at 405.

There are two exceptions to the rule that the duty to defend must be determined only from the complaint. First, if the complaint allegations are unclear, the insurer must investigate to determine if there are any facts in the complaint that could conceivably give rise to a duty to

8

defend. *Woo*, 161 Wn.2d at 53-54. Second, if the complaint allegations conflict with known facts or are ambiguous or inadequate, the insurer may consider facts outside the complaint in order to trigger – but not to deny – a duty to defend. *Woo*, 161 Wn.2d at 54.

Despite these broad rules favoring the insured, insurers do not have an unlimited duty to defend. "Although this duty to defend is broad, it is not triggered by claims that clearly fall outside the policy." *Immunex*, 176 Wn.2d at 879.

Because the duty to defend is determined based on the allegations in the complaint (or in this case, in the demand letter) and is broader than the duty to indemnify, whether or not a court subsequently finds no duty to indemnify is irrelevant to the existence of a duty to defend. The duty to defend arises when the claim is first brought. *Woo*, 161 Wn.2d at 52. If a duty to defend exists, the insurer must defend until a determination of no coverage. *Am. Best Food*, 168 Wn.2d at 405. " ' Once the duty to defend attaches, insurers may not desert policyholders and allow them to incur substantial legal costs while waiting for an indemnity determination.' " *Am. Best Food*, 168 Wn.2d at 405 (quoting *VanPort Homes*, 147 Wn.2d at 760). If an insurer does defend, a finding of no coverage eliminates the duty to defend only from that point forward. *Immunex*, 176 Wn.2d at 885-86 (insurer has no right to obtain reimbursement of defense costs based on a later determination of no coverage).[2]

4. USAA Homeowners Insurance Policy

USAA's homeowners insurance policy provided coverage for bodily injury caused by an

---

[2] The trial court concluded that the issue of USAA's duty to defend was "subordinate to the issue as to finding that there is policy coverage under the facts of this case." CP at 630. To the extent that the trial court was suggesting that USAA had a duty to defend only if there was a duty to indemnify, this is an incorrect statement of the law.

" occurrence ", which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . bodily injury." CP at 210-11. The question here is whether it is conceivable that the incident described in Speed's demand letter could be considered an "accident."

Our Supreme Court has referenced two similar definitions of the term "accident " in insurance coverage cases: (1) "an unusual, unexpected, and unforeseen happening," *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 95, 776 P.2d 123 (1989); and (2) a loss that happens " ' without design, intent, or obvious motivation.' " *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 685, 801 P.2d 207 (1990) (quoting *Federated Am. Ins. Co. v. Strong*, 102 Wn.2d 665, 674, 689 P.2d 68 (1984)), *overruled on other grounds by Butzberger v. Foster*, 151 Wn.2d 396, 89 P.3d 689 (2004). Whether an event constitutes an accident is determined objectively and does not depend on the insured's subjective perspective. *Roller*, 115 Wn.2d at 685. " Either an incident is an accident or it is not." *Roller*, 115 Wn.2d at 685.

In applying the accident requirement Washington courts repeatedly have held that the insured's deliberate conduct generally does not constitute an accident.

> "[A]n accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual."

*Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 401, 823 P.2d 499 (1992) (internal quotation marks omitted) (quoting *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 104, 751 P.2d 282 (1988)). Under this standard, there is no accident even if the insured did not expect or intend any injury. *See Butler*, 118 Wn.2d at 400-01 (no accident even assuming injury resulted from an unintentional ricochet of bullet); *State Farm Fire & Cas. Co. v. Parrella*, 134 Wn. App. 536,

541, 141 P.3d 643 (2006) (no accident even though it was undisputed that insured did not intend to injure claimant).

*Safeco Ins. Co. of Am. v. Dotts*, 38 Wn. App. 382, 685 P.2d 632 (1984) is illustrative. In that case, the insured slapped a person he found at his girlfriend's home in order to get the person's attention. *Dotts*, 38 Wn. App. at 383-84. The insured testified that he was not angry and did not intend to hurt the person. *Dotts*, 38 Wn. App. at 384. The person seemed unaffected, but later lapsed into a coma and died. *Dotts*, 38 Wn. App. at 384. Division Three of this court held that because the slap was a deliberate act, the death did not result from an accident. *Dotts*, 38 Wn. App. at 385-87.

Here, Speed's demand letter unambiguously described Geyer's conduct as deliberate. The letter alleged that Geyer chased after Speed in his vehicle for an extended period and, when the vehicles stopped for a traffic signal, Geyer got out of his vehicle and beat Speed with his fists and a metal thermos. The letter also stated that the case was aggravated by Geyer's "intentional conduct" and was not a case involving negligence. CP at 61. Further, the letter provides no allegations that would support the conclusion that there was an " 'additional, unexpected, independent and unforeseen happening' " that would convert Geyer's deliberate acts into an accident. *Butler*, 118 Wn.2d at 401 (internal quotation marks omitted) (quoting *Detweiler*, 110 Wn.2d at 104). Even interpreting the allegations liberally and resolving doubts in favor of a duty to defend, the USAA homeowners policy does not conceivably cover the allegations in Speed's demand letter.

Even if USAA were required to consider evidence outside the demand letter, that evidence only confirmed that Geyer's conduct was deliberate. Geyer testified in his criminal trial that he did deliberately hit Speed, but contended that he was acting in self-defense.

11

However, Washington law is clear that no accident exists even when the insured's deliberate conduct is performed in self-defense. *Brosseau*, 113 Wn.2d at 96 (insured's claim that he was acting in self-defense when causing intentional bodily injury to another "in no way negates the deliberate nature of his act" and does not bring the conduct within the definition of an "accident"). And although Geyer's third degree assault conviction was based on a criminal negligence standard, this fact establishes only that the jury was not convinced beyond a reasonable doubt that Geyer intended to injure Speed. The conviction does not change the deliberate nature of Geyer's conduct. And as noted above, the insurer's intent to cause injury does not affect the "accident" analysis. Further, we rejected a similar argument in *Allstate Ins. Co. v. Bauer*, 96 Wn. App. 11, 16, 977 P.2d 617 (1999).

We hold that USAA had no duty to defend against Speed's demand letter under its homeowners policy because as a matter of law, the incident described in the letter did not constitute an "accident" as the policy required.[3]

5.      USAA Auto Insurance Policy

Geyer's auto insurance policy provided coverage for bodily injury caused by an " auto accident." CP at 213. A duty to defend exists only if it is conceivable that the incident described in Speed's demand letter could be considered an "auto accident."

The policy does not define "auto accident." However, as discussed above the term "accident" has an established meaning in Washington. Our holding that Speed's claim did not

---

[3] We need not address whether coverage also would be precluded under the intentional act exclusion in USAA's homeowners policy, which excludes coverage for injury "caused by the intentional or purposeful acts of any insured, including conduct that would reasonably be expected to result in bodily injury to any person." CP at 212 (boldface omitted). We do note that the demand letter unambiguously alleges purposeful acts, and hitting someone with fists and a metal thermos reasonably would be expected to cause injury.

allege an accident for purposes of the homeowners policy applies equally to the "auto accident" requirement in USAA's auto policy. *See, e.g., Roller*, 115 Wn.2d at 685 (vehicle intentionally ramming another vehicle was not an accident).

We hold that USAA had no duty to defend against Speed's demand letter under its auto policy because as a matter of law, the incident described in the letter did not constitute an "auto accident" as the policy required.[4]

B.      EFFECT OF USAA'S "UNCERTAINTY" REGARDING COVERAGE

Speed argues that even if the language of his demand letter did not trigger a duty to defend, USAA still had a duty to defend because it was "uncertain[ ]" regarding coverage. Br. of Appellant at 27-28. Speed emphasizes that after USAA received Speed's demand letter, it informed Geyer that his claim was still unresolved because "we continue to investigate coverage and liability in this matter." CP at 566. USAA later told Geyer that coverage was "questionable" under both policies, CP at 81, and that "[c]overage *may* be precluded" under both policies. CP at 781 (emphasis added). Speed argues that because USAA made these statements and because USAA's adjusters allegedly were unsure about coverage, USAA "admitted the

---

[4] Because there was no "accident" here, we need not decide whether Speed's injury was caused by an "auto" accident. We note that Speed's injuries did not involve the use of an auto, but rather, his vehicle was the "mere situs" of the assault. *Mut. of Enumclaw Ins. Co. v. Jerome*, 122 Wn.2d 157, 163, 856 P.2d 1095 (1993) (addressing issue under policy requiring that a claim arise out of the use of a vehicle). And as with the homeowners policy, we need not decide whether coverage also would be precluded under the intentional act exclusion in USAA's auto policy, which excludes coverage if the insured "intentionally acts or directs to cause [bodily injury] or who acts or directs to cause with reasonable expectation of causing [bodily injury]." CP at 214. Again, we note that the demand letter unambiguously alleges intentional acts, and hitting someone with fists and a metal thermos reasonably would be expected to cause injury.

potential for coverage" and created the " uncertainty " regarding coverage necessary to trigger the duty to defend. Br. of Appellant at 25, 27-28. We disagree.[5]

Speed's argument apparently derives from *American Best Food*, where the court stated that "any uncertainty works in favor of providing a defense to an insured." 168 Wn.2d at 408. But Speed fails to cite any authority suggesting that the insurer's uncertainty regarding coverage can trigger a duty to defend. As stated above, the existence of a duty to defend is a question of law for the court, based solely on the claim allegations. *Woo*, 161 Wn.2d at 52-53. The court in *American Best Food* was addressing uncertainty in the applicable law, not an insurer's uncertainty regarding coverage. 168 Wn.2d at 408. What the insurer believes about the duty to defend or policy coverage is immaterial to the court's duty to defend determination.

Further, to allow an insurer's conduct to give rise to the duty to defend would conflict with the rule that insurance coverage cannot be created by equitable estoppel. *See Shows v. Pemberton*, 73 Wn. App. 107, 111, 868 P.2d 164 (1994) (" '[U]nder no conditions can . . . coverage or restrictions on the coverage be extended by the doctrine of waiver or estoppel.' " ) (quoting *Carew, Shaw & Bernasconi v. Gen. Cas. Co. of Am.*, 189 Wash. 329, 336, 65 P.2d 689 (1937)).

We reject the argument that an insurer's subjective uncertainty regarding coverage can trump the court's legal determination that no duty to defend exists based on the claim allegations and the policy language. We hold that USAA's statements indicating " uncertainty " regarding

---

[5] We note that USAA's alleged "uncertainty" appeared to derive from its mistaken belief that it did not need to decide whether a duty to defend existed until Speed filed suit. As a result, it made sense for USAA to continue to investigate and to hold open the possibility of coverage while awaiting a formal complaint. In fact, as USAA conceded on appeal, USAA had a duty to defend against Speed's demand letter if its allegations raised a potential for coverage. As discussed below, we need not address whether USAA could be subject to bad faith liability even in the absence of a duty to defend when it failed to make a defense decision upon receiving Speed's demand letter. That issue was not raised in this case.

coverage have no bearing on our holding that USAA had no duty to defend Speed's claim as a matter of law based on the claim allegations and USAA's policy language.

C.    DUTY TO EXPLORE SETTLEMENT

Speed argues that the insurer's duty to defend includes a duty to make affirmative efforts to settle claims against its insured. Washington courts have recognized that under certain circumstances an insurer must make reasonable efforts to pursue settlement. *See Moratti v. Farmers Ins. Co. of Wash.*, 162 Wn. App. 495, 504, 254 P.3d 939 (2011), *review denied*, 173 Wn.2d 1022 (2012); *Truck Ins. Exch. of the Farmers Ins. Grp. v. Century Indem. Co.*, 76 Wn. App. 527, 534, 887 P.2d 455 (1995).

But here, as a matter of law USAA had no duty to defend against Speed's demand letter. Speed cites no authority for the proposition that an insurer has a duty to explore settlement under these circumstances.

D.    BAD FAITH CLAIMS

Because USAA had no duty to defend against Speed's demand letter, we hold that USAA's failure to defend did not constitute bad faith. When an insurer correctly denies a duty to defend, there can be no bad faith claim based on that denial. *See Wellman & Zuck, Inc. v. Hartford Fire Ins. Co.*, 170 Wn. App. 666, 677, 285 P.3d 892 (2012) (because insurer did not breach duty to defend, trial court properly dismissed bad faith claim), *review denied*, 176 Wn.2d 1019 (2013).

Speed's coverage by estoppel claim fails for the same reason. Estoppel to deny coverage is one remedy for breaching a duty to defend in bad faith. *Butler*, 118 Wn.2d at 392-94. But in the absence of bad faith, coverage by estoppel does not apply. *Mut. of Enumclaw Ins. Co. v. T&G Constr., Inc.*, 165 Wn.2d 255, 267 n.4, 199 P.3d 376 (2008).

15

Although Speed has no bad faith claim arising from USAA's failure to defend, an insured can assert bad faith claims that are not dependent on the duty to defend, settle, or indemnify. *Onvia*, 165 Wn.2d at 132. Below, Speed did assert other bad faith claims against USAA based on chapter 284-30 WAC, which may not have been directly related to USAA's failure to defend. And in his briefing Speed argued that USAA mishandled his claim in a number of ways. Speed assigns error to the trial court's dismissal of these claims. However, in the trial court Speed did not oppose the dismissal of his bad faith claims because those claims were "inextricably tied to USAA's duties to defend, settle or indemnify which the Court has now dismissed with prejudice." CP at 947. Moreover, Speed has not presented any argument on appeal to support his assignment of error on this issue so we decline to consider it further. RAP 10.3(a)(6); *Kadoranian v. Bellingham Police Dep't*, 119 Wn.2d 178, 191, 829 P.2d 1061 (1992).

Similarly, Speed asserted a claim against USAA for violation of the IFCA. RCW 48.30.015(1). As with the other bad faith claims, Speed did not oppose dismissal of the IFCA claim and does not present any argument on appeal on this claim. Accordingly, we do not consider the issue further.

E.     ATTORNEY FEES

Speed requests attorney fees in the trial court and on appeal under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Under *Olympic Steamship*, "an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action, to obtain the full benefit of his insurance contract." 117 Wn.2d at 53. Because Speed is not the prevailing party, he is not entitled to fees under *Olympic Steamship. Humleker v. Gallagher Bassett Servs. Inc.*, 159 Wn. App. 667, 686, 246 P.3d 249 (2011).

No. 43728-7-II

Speed also requests attorney fees under the IFCA. RCW 48.30.015(3) allows an insured to recover attorney fees as the prevailing party in an IFCA action. But because Speed is not the prevailing party here, he is not entitled to fees under the IFCA.

We affirm the trial court's summary judgment orders.

MAXA, J.

We concur:

JOHANSON, A.C.J.

BJORGEN, J.