# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JEFFREY HALEY, an individual, | ) | No. 77769-6-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| KATHLEEN HUME, an individual; and | ) | PUBLISHED OPINION |
| FIRST AMERICAN TITLE INSURANCE | ) | |
| COMPANY, formerly known as Pacific | ) | |
| Northwest Title Company, | ) | FILED: September 9, 2019 |
| | ) | |
| Respondent. | ) | |

MANN, A.C.J. — Jeffrey Haley appeals the trial court's summary judgment

dismissal of his claim that Kathleen Hume violated their statutory warranty deed by

abandoning an easement prior to selling her property to Haley. Haley also appeals the

trial court's summary judgment dismissal of his claim against First American Title

Insurance Company (First American) for failing to defend.

Because the statute of limitations has run on Haley's warranty claims, the trial

court correctly dismissed Haley's claims against Hume. Because general exception 3 in

the title insurance policy applies, the trial court also correctly dismissed Haley's claims

against First American. Finally, the trial court did not err in denying Hume's motion for an award of attorney fees and sanctions. We affirm.

I.

This case concerns Lot B of Mercer Island Short Plat No. MI-78-4-018, and an easement located on the adjacent open space Tract A. At issue is the 2005 sale of Lot B by Hume to Haley, and specifically whether Haley purchased the right to ingress, egress, and park, on the easement in Tract A. The following is a not-to-scale representation of the properties at issue.



In 1979, the owner of Tract A granted a 10-foot-wide and 140-foot long easement along the southern edge of Tract A to the owners of Lot B for utilities, vehicular and pedestrian ingress and egress, and parking. The easement was necessary to provide access over a paved road on Tract A to Lots C and D. Persons accessing Lots C and D would cut across the Lot B driveway and proceed on the paved access road on Tract A to reach their properties.

On September 6, 2000, Hume purchased Lot B. In 2001, John Pugh purchased Lot D and Tract A. In 2001, Pugh applied for a variance and permit from the City of Mercer Island to remove approximately 95 linear feet of the underground culvert on

Tract A and expose, or daylight, that portion of the stream connecting to Lake Washington. The application also sought to remove the entire access driveway in the easement area on Tract A and to install a new driveway access serving Lots C and D on the north side of Tract A. The new driveway was located outside of the required 75-foot stream setback and included a bridge over the open stream. The plans included significant landscaping improvements, shade trees, and an 18-inch high rockery along the sides of the stream channel.

At the same time, Pugh approached Hume with his proposed plan for improvements on Tract A. Hume agreed to Pugh's plan because it eliminated the need for vehicles and pedestrians to cut across her driveway. Hume also believed that Pugh's plan created additional privacy and safety to her property, was a visual improvement, and added value to her home. Hume agreed to abandon a portion of the easement in Tract A.

After the City of Mercer Island approved Pugh's variance and permit, he removed the paved access road on Tract A, opened the culvert to create an open stream with an 18-inch high rockery along the sides of the channel, and planted trees and other landscaping. The opening of the stream corridor and the removal of the previous access road in the easement area made it impossible for vehicles or pedestrians to use the easement area for ingress, egress, or parking. Hume conceded that after 2001, no surface use of the easement was possible and she abandoned any claim of easement rights in Tract A with the exception of easement rights for underground utilities serving Lot B. All of the improvements to the stream and Tract A were completed in late 2003 and early 2004.

In 2005, Haley purchased Lot B by statutory warranty deed from Hume. In connection with the purchase, Haley obtained a title insurance policy from Pacific Northwest Title Insurance Company, Inc., the predecessor of First American.[1]

In 2012, Haley discovered the original easement on Tract A. Haley asked Pugh for permission to build a pedestrian bridge over the steam and widen his driveway into the easement area for additional parking. Pugh refused this request and informed Haley that Hume had previously abandoned the easement. Haley filed suit against Pugh, and Pugh counterclaimed against Haley to quiet title to the easement. During litigation, Pugh submitted a declaration from Hume that admitted she had consented to the improvements to the easement area and was aware that the improvements were an abandonment of her easement rights.

The trial court granted summary judgment in favor of Pugh declaring that Hume abandoned the easement except the rights to utility, sewage, and drainage to the extent those utilities served Haley's property. This court affirmed the trial court in an unpublished decision. Haley v. Pugh, No. 70649-7-I (Wash. Ct. App. Oct. 27, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/706497.pdf.

On November 26, 2012, prior to the trial court's final decision on summary judgment, Haley tendered his defense to First American. First American rejected Haley's tender of defense.

On December 21, 2016, Haley filed suit against Hume and First American. Haley asserted that by abandoning the easement Hume violated the statutory warranties included in their deed. Haley also asserted that First American acted in bad

---

[1] Which was later acquired by First American Title Insurance Company.

-4-

faith when it denied Haley's tender of defense, and that First American's conduct amounted to a breach of the Consumer Protection Act, ch. 19.86 RCW. First American filed a counterclaim against Haley seeking a declaratory judgment that it owed no duty to defend Haley.

In October 2017, each party moved for summary judgment. Hume also requested her attorney fees and costs and asked the court to sanction Haley under CR 11 and RCW 4.84.185. On November 3, 2017, the trial court denied Haley's motion, granted Hume's motion, and denied Hume's request for attorney fees and costs. On November 6, 2017, the trial court granted First American's motion and dismissed the case. Haley appeals both orders.

II.

Haley first contends that the trial court erred in dismissing Haley's claims against Hume for her breach of present and future warranties. We disagree.

We review summary judgment decisions de novo and engage in the same inquiry as the trial court. Mastro v. Kumakichi Corp., 90 Wn. App. 157, 162, 951 P.2d 817 (1998). "Summary judgment is appropriate only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Mastro, 90 Wn. App. at 157 (citing CR 56(c)). "All facts and reasonable inferences therefrom must be viewed in the light most favorable to the nonmoving party." Post v. City of Tacoma, 167 Wn.2d 300, 308, 217 P.3d 1179 (2009).

A.

A statutory warranty deed provides five guarantees against title defects:

> (1) that the grantor was seised of an estate in fee simple (warranty of seisin); (2) that he had a good right to convey that estate (warranty of right to convey); (3) that title was free of encumbrances (warranty against

-5-

encumbrances); (4) that the grantee, his heirs and assigns, will have quiet possession (warranty of quiet possession); and (5) that the grantor will defend the grantee's title (warranty to defend).

Mastro, 90 Wn. App. at 162 (quoting 17 WILLIAM B. STOEBUCK, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 7.2, at 447 (1995)). The warranties of seisin, the right to convey, and against encumbrances, are present covenants. Present covenants are breached, if at all, at the time of conveyance. Double L. Properties, Inc. v. Crandall, 51 Wn. App. 149, 152, 751 P.2d 1208 (1988). The warranties of quiet enjoyment and to defend are future covenants. "These covenants are generally breached after conveyance, when a third party asserts a claim to the property." Rowe v. Klein, 2 Wn. App. 2d 326, 329, 409 P.3d 1152 (2018).[2] The statute of limitations for an action based on contract or written agreement, including breach of a statutory warranty deed, is six years. RCW 4.16.040(1); Erickson v. Chase, 156 Wn. App. 151, 231 P.3d 1261 (2010); Whatcom Timber Co. v. Wright, 102 Wash. 566, 568, 173 P. 724 (1918).

B.

We first address Haley's claim that Hume breached the present covenants. Haley does not dispute that more than six years have elapsed since the 2005 warranty deed conveyance. Haley instead argues that the discovery rule should apply. The discovery rule is "a rule for determining when a cause of action accrues and the statute of limitations commences to run." 1000 Virginia Ltd. Partnership v. Vertecs Corp., 158 Wn.2d 566, 587, 146 P.3d 423 (2006). Haley argues that because Hume concealed the

---

[2] Initially, Hume asserts that statutory warranties do not apply to easements because easements are only usufructuary rights: "[a]lthough the dominate estate has a right to use the servient estate, the land remains the property of the servient estate." Kave v. McIntosh Ridge Primary Road Ass'n, 198 Wn. App. 812, 825, 394 P.3d 446 (2017). It is unnecessary for us to decide this issue because even if we assume that statutory warranties can apply to easements, all of Haley's statutory warranty claims were properly dismissed on different grounds.

-6-

fact that she abandoned the easement until 2012, it was impossible for him to know that she violated the present statutory warranties and therefore the statute of limitations should not begin to run against him until 2012.

We recently rejected a similar argument in Rowe v. Klein, 2 Wn. App. 2d 326, 409 P.3d 1152 (2018). Jeffrey and Rebecca Rowe (Rowe) bought property from Trent and Melissa Adams (Adams) via a statutory warranty deed in 1998. The Adams/Rowe property was adjacent to and south of property owned by Joel Klein. Klein contended that he had maintained the northern 10 feet of the Adams/Rowe property from 1974 to 1984 and thus had adversely possessed the property prior to Rowe's purchase from Adams. In 2014, the Rowe sued Klein for ejectment and Klein counterclaimed for adverse possession. The trial court granted Klein's motion for summary judgment and quieted title to the 10 foot strip of property in Klein. Rowe, 2 Wn. App. 2d at 330-31.

Six years and three months after Rowe bought the property he sued Adams for breach of warranties and covenants. Id. While the six-year statute of limitations had run, Rowe argued that because Klein's possession at the time of conveyance was not evident, his possession was not disturbed until Klein brought his claim for adverse possession in 2014. Id. at 334-35. We disagreed, concluding instead that regardless of whether Klein's occupation was apparent in 2014, because Klein had adversely possessed the property from 1974 to 1984, Adams did not have complete legal title to the property in 2014. Id. Consequently, the warranty of seisin was breached at conveyance and the six-year statute of limitation began to run at conveyance. Id.

Similarly here, Haley is arguing that the statute of limitations should not have run on his present statutory warranty claims because Hume's abandonment of the

easement was not evident at the time of conveyance. But, just as in Rowe, because Hume had abandoned her right to the easement, she did not have legal title to the easement when she conveyed Lot B to Haley. As with Rowe, the present warranties were breached at conveyance. See 2 Wn. App. 2d at 335. Since Haley did not file suit against Hume until 11 years later, his claims are time barred. RCW 4.16.040(1).

C.

We next address Haley's claim for breach of the future warranty of quiet possession. The warranty of quiet possession "'warrants to the grantee, his or her heirs and assigns, the quiet and peaceable possession' of the property conveyed." Rowe, 2 Wn. App. 2d at 335. The warranty guarantees the grantee "shall not, by force of paramount title, be evicted from the land or deprived of its possession. Foley v. Smith, 14 Wn. App. 285, 290-91, 539 P.2d 874 (1975). The warranty of quiet possession is "breached when the buyer of land is actually or constructively evicted by one who holds a paramount title that existed at the time of the conveyance." Rowe, 2 Wn. App. 2d at 336. "Where a third party with superior title is in possession at the time of conveyance so that the buyer cannot take possession, the buyer is constructively evicted at conveyance." Rowe, 2 Wn. App. 2d at 336.

The dispositive question is whether, when Hume conveyed Lot B to Haley, Pugh already possessed the disputed easement area such that Haley was unable to take possession. If so, then Haley was constructively evicted at conveyance and the statute of limitations began to run at conveyance. Rowe, 2 Wn. App. 2d at 338.

In Rowe, the court determined that Klein had adversely possessed the disputed strip of land by his use from 1974 to 1984, thereby triggering claims for present

-8-

warranties at conveyance. We considered it a different question, however, when addressing the future warranty of quiet possession. We instead focused on whether Klein's use of the property at the time of possession would put a reasonable person on notice of Klein's claim. Rowe, 2 Wn. App. 2d at 339. We concluded that Rowe was on notice as to the area where Klein's greenhouse intruded into the disputed strip. We further concluded, however, that Rowe was not on notice of Klein's constructed possession of the remainder of the strip. Thus, the statute of limitations for Rowe's claim for breach of the warranty of quiet possession did not start to run until Klein sued for adverse possession.

In McDonald v. Ward, 99 Wash. 354, 169 P. 851 (1901), the court considered a buyer's claim against the seller for breach of the warranty of possession. There, the buyer purchased property that included a railroad. The buyer farmed all of the land except for a 20-foot strip adjacent to the railroad line. Id. at 354-55. After the railroad claimed superior title a strip of land 200-feet wide, the buyer brought an action against the seller. The McDonald court held that the buyer was on constructive notice of the railroad's claim of a 40-foot wide strip between the railroad track and a line of telegraph poles running parallel to the track because the telegraph line was incidental to the track and thus readily apparent to a reasonable person that the railroad occupied the area between the track and telegraph. McDonald, 99 Wash. at 358-59. Consequently, the statute of limitations for the 40-foot wide strip began to run at the conveyance. Because there was no similar indication of the railroad's superior claim to the remaining area, however, the McDonald court concluded that the buyer's claim against the seller

for the remaining strip of land commenced to run at the time the railroad brought its action to oust the buyer. Id.

Here, while Haley claims to have used the easement area by maintaining a small hedge and landscaping between the stream and his driveway, there was no evidence that at the time of Haley's 2005 purchase from Hume, the easement area was usable for ingress, egress, or parking. To the contrary, north of the small hedge the land drops steeply to the newly daylighted stream. As with the greenhouse area in Rowe, and the strip of land between the railroad track and telegraph lines in McDonald, a reasonable person would have been on notice that the easement area was not usable for its intended purpose.[3] Because Pugh already possessed the disputed easement area such that Haley was unable to take possession, Haley was constructively evicted at conveyance and the statute of limitations began to run at conveyance.

D.

Haley also alleges that Hume violated the warranty to defend. "The warranty to defend is a future covenant that no lawful, outstanding claims against the property exist." Mastro, 90 Wn. App. at 164. Before the buyer can recover under this warranty, the buyer "must make an effective 'tender of defense' to the [seller]." Mastro, 90 Wn. App. at 164 (quoting Double L Props., Inc., 51 Wn. App. at 156.)

> An effective tender has four elements. It must
>
> notify the [seller] that: (1) there is a pending action; (2) if liability is found, the [buyer] will look to the [seller] for indemnity; (3) the notice constitutes formal tender of the right to defend the action; and (4) if the [seller] refuses

---

[3] Hume also points out that development adjacent to the daylighted stream would be prohibited by Mercer Island. It appears that Mercer Island requires a standard buffer of 25 feet for streams restored or created from the opening of a previously piped watercourse. Mercer Island Municipal Code 19.07.070.

to defend, it will be bound to factual determinations in the original action in subsequent litigation between the [buyer] and [seller].

Erickson, 156 Wn. App. at 158 (quoting Mastro, 90 Wn. App. at 164-65). The seller must then "refuse this tender to breach the warranty to defend." Erickson, 156 Wn. App. at 158.

While Haley v. Pugh was pending before the trial court, Haley sent Hume two e-mails. Haley concedes that these e-mails did not comply with the detailed formalities of tendering a defense but asserts that detailed formalities in the tender would have been futile and therefore were unnecessary. But Haley offers no support for the proposition that when a party believes formally tendering a defense would be futile, that party is relieved from the burden of doing so. To the contrary, this court has been unequivocal when stating the requirement to properly tender defense. See Mastro, 90 Wn. App. at 165 ("Mastro's letter clearly and unambiguously me[t] the criteria."). See also Edmonson v. Popchoi, 172 Wn.2d 272, 279, 256 P.3d 1223 (2011) ("we hold that the warranty to defend means that, upon proper tender, a grantor is obligated to defend in good faith and is liable for a breach of that duty.") (Emphasis added).

For the duty to defend to be breached, the buyer must first tender a formal defense that meets the Mastro requirements. 90 Wn. App. at 165. Haley's e-mails to Hume did not meet these formal requirements and therefore the trial court did not err in granting Hume's motion for summary judgment.[4]

---

[4] For the first time in his reply brief, Haley also argues that Hume violated her duty of good faith and fair dealing. Haley has waived this argument. See Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010) ("a party that offers no argument in its opening brief on a claimed assignment of error waives the assignment."); Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) ("an issue raised and argued for the first time in a reply brief is too late to warrant consideration.").

III.

Haley next contends that the trial court erred by dismissing Haley's claims for breach of duty to defend and bad faith against First American. We disagree.

A.

Standard liability insurance policies impose two distinct duties on insurance companies: "the duty to defend the insured against lawsuits or claims and the duty to indemnify the insured against any settlements of judgments." United Services Auto. Ass'n v. Speed, 179 Wn. App. 184, 194, 317 P.3d 532 (2014). "[T]he duty to defend is different from and broader than the duty to indemnify." Am. Best Food, Inc. v. Alea London, Ltd., 168 Wn.2d 398, 404, 229 P.3d 693 (2010).

"The duty to indemnify only exists if the policy actually covers the insured's liability. The duty to defend is triggered if the insurance policy conceivably covers allegations in the complaint." Am. Best Food, 168 Wn.2d at 404 (citing Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 53, 164 P.3d 454 (2007)). "The duty to defend arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage." Am. Best Food, 168 Wn.2d at 404 (internal citation omitted). The insurer "must defend until it is clear that the claim is not covered." Am. Best Food, 168 Wn.2d at 405.

"The duty to defend generally is determined from the 'eight corners' of the insurance contract and the underlying complaint." Expedia Inc. v. Steadfast Ins. Co., 180 Wn.2d 793, 803, 329 P.3d 59 (2014). There are two exceptions to the eight corners rule. "First, if coverage is not clear from the face of the complaint but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt."

-12-

Expedia, 180 Wn.2d at 803. "Second, if the allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous, facts outside the complaint may be considered." Expedia, 180 Wn.2d at 803-04. But "extrinsic facts may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty." Expedia, 180 Wn.2d at 804. While the insurer is allowed to "investigate the facts and dispute the insured's interpretation of the law . . . if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." Am. Best Food, 168 Wn.2d at 405.

B.

First American properly rejected Haley's tender of defense because general exception 3 in its title policy applied to the Pugh v. Haley dispute. We "interpret insurance policy provisions as a matter of law[,]" and construe exclusionary clauses most strictly against the insurer. Am. Best Food, 168 Wn.2d at 404, 406.

General exception 3 states that "[t]his policy does not insure against loss or damage by reason of . . . other matters which would be disclosed by an accurate survey or inspection of the premises." The American Land Title Association and National Society of Professional Surveyors (ALTA/NSPS) publishes the minimum standard detail requirements for land title surveys.[5] The 2005 edition provided that "[t]he survey shall be performed on the ground and the plat or map of a [survey] shall contain[:]"

> (f) the character of any and all evidence of possession shall be stated and the location of such evidence carefully given in relation to both the measured boundary lines and those established by the record . . . .
>
> (h) All easements evidenced by Record Documents which have been delivered to the surveyor shall be shown . . . If such an easement cannot

---

[5] See NAT'L SOC. OF PROF. SURVEYORS, ALTA/NSPS STANDARDS (2016), https://nsps.us.com/page/ALTANSPSStandards. This information was presented to the trial court.

be located, a note to this effect shall be included. Observable evidence of easement and/or servitudes of all kinds . . . on adjoining properties if they appear to affect the surveyed property, shall be located and noted. If the surveyor has knowledge of any such easement and/or servitudes, not observable at the time the present survey is made, such lack of observable evidence shall be noted.

. . . .

(j) Where there is evidence of use by other than the occupants of the property, the surveyor must so indicate . . .

(l) Ponds, lakes, springs, or rivers bordering on or running through the premises being surveyed shall be shown.

These minimum ALTA/NSPS requirements confirm that if Haley had conducted a survey in 2005, it would have disclosed that the easement area was exclusively possessed by someone other than Hume. The survey would have disclosed the recorded easement benefitting Haley's property. Following the ALTA/NSPS standard, the survey would have noted the evidence of Pugh's possession, noted that the easement was not observable at the time the survey was made, noted that there was evidence of use by someone other than Hume, and noted that there was a stream in the middle of the easement area. All of these would have indicated that the condition of the easement area in 2005 was inconsistent with the use of the easement that Haley believed he was acquiring. As such, a survey would have disclosed the loss that Haley now asserts.

Haley argues that First American violated the eight corners rule in rejecting his defense under general exception 3. This is so, he contends, because First American relied on information outside the complaint and policy. But in his counterclaim, Pugh asserted that "[a]t the time [Haley] acquired title to his property, the easement area . . . had been altered in such a manner as to defeat and render impossible the intended use of the easement." If true, then an accurate inspection would have

-14-

identified the fact that there was a recorded easement on Tract A benefitting Lot B, that the condition of the easement area made the use of that easement impossible, and that Pugh was in exclusive possession of the easement area. Therefore, First American did not rely on information outside of the eight corners in rejecting Haley's tender of defense under general exception 3.

Haley further argues that under Nautilus, Inc. v. Transamerica Title Ins. Co. of Wash., 13 Wn. App. 345, 534 P.2d 1388 (1975), general exception 3 does not apply. In Nautilus, however, the dispute was over who owned the land between the ordinary high water mark and the meander line of a river. The court determined that because this was a legal question about the interpretation of a deed, a survey would not answer it. Nautilus, 13 Wn. App. at 349. Here, however, the dispute was not over who owned the easement area but what the easement area's condition was when Haley purchased Lot B. A survey would be able to determine that the condition of the easement area indicated that Pugh—or at least someone other than Hume—was in exclusive possession of the area.

If "it is clear from the face of the complaint that the policy does not provide coverage" then there is no duty to defend. Speed, 179 Wn. App. at 196 (citing Woo, 161 Wn.2d at 404). Because general exception 3 to Haley's title insurance policy applied and indicated that First American did not have a duty to defend Haley, the trial court did not err in granting First American's motion for summary judgment. Therefore, we find it unnecessary to determine whether any of the other policy exceptions or exclusions also apply, or whether Haley's tendered his defense to First American in a timely manner.

IV.

Hume cross appeals and argues that the trial court erred in denying the requests for an award of attorney fees under either the residential purchase and sale agreement, or alternatively, under CR 11 and RCW 4.84.185. We disagree.

A.

The residential real estate purchase and sale agreement between Haley and Hume provides that "[i]f Buyer or Seller institutes suit against the other concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." Hume asked the trial court to award her reasonable attorney fees and costs under this provision of the purchase and sale agreement. The trial court correctly denied Hume's request for attorney fees and costs because the purchase and sale agreement merged with the statutory warranty deed upon closing.

In Brown v. Johnson, the buyer sued the seller of a home for misrepresentation. 109 Wn. App. 56, 34 P.3d 1233 (2001). This court reversed the trial court's "refusal to award attorney fees based on the parties' purchase and sale agreement" over the seller's argument that the purchase and sale agreement merged with the deed upon transfer. Brown, 109 Wn. App. at 57, 59. Under the merger doctrine, upon closing "the terms of a real estate purchase and sale agreement merge into a deed" but the doctrine "has its exceptions." Brown, 109 Wn. App. at 59-60. "The rule . . . does not apply where terms of a purchase and sale agreement are not contained in or performed by the execution and delivery of the deed, are not inconsistent with the deed, and are independent of the obligation to convey." Brown, 109 Wn. App. at 60. In Brown, the court determined that the merger doctrine did not apply because the action did "not

-16-

relate to title or any other terms contained in the deed and therefore [fell] within the doctrine's exceptions." 109 Wn. App. at 60.

To the contrary, here, Haley tied his claims directly to the deed and not the purchase and sale agreement. Therefore, upon closing the purchase and sale agreement merged with the deed. As that deed does not include a provision relating to attorney fees, the trial court did not err in denying Hume's motion. [6]

Hume disagrees with this conclusion and argues that while Haley's other claims were based on the deed, his allegation that Hume violated her duty of good faith and fair dealing must have been based on the purchase and sale agreement. Hume offers no support for this claim other than the fact that Haley's attorney mentioned the purchase and sale agreement once during oral argument, and that Haley asserted separate causes of action for the breach of good faith and fair dealing and the breach of the statutory warranties. But "[t]here is in every contract an implied duty of good faith and fair dealing," Badgett v. Security State Bank, 116 Wn.2d 563, 569, 807 P.2d 356 (1991),[7] and Hume has not shown how Haley's claims were based on the implied duty of good faith and fair dealing in the purchase and sale agreement and not the implied duty of good faith and fair dealing in the deed.

B.

Hume also argues that the trial court erred in denying her motion for attorney fees under CR 11 and RCW 4.84.185. CR 11 requires attorneys to sign "[e]very

---

[6] Hume also cites to an unpublished Division Three opinion Kloster v. Roberts, No. 30546-5-III (Wash. Ct. App. Feb. 6, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/305465.unp.pdf. But the court in Kloster simply analogized to Brown and determined that "[t]he Kloster's misrepresentation and concealment claims" arose out of the purchase and sale agreement. Kloster, slip op. at 44. Therefore, Kloster does not support Hume's argument for the same reason Brown does not support Hume's argument.

[7] Including in a statutory warranty deed. See Edmonson, 172 Wn.2d at 280.

pleading, motion, and legal memorandum" as a certification that the filing "is well grounded in fact; . . . is warranted by existing law or a good faith argument for the extension . . . of existing law; . . . [and] is not interposed for any improper purpose." RCW 4.84.185 allows a court to award the prevailing party its attorney fees and costs upon a finding that "the action. . . was frivolous and advanced without reasonable cause."

"The purpose behind CR 11 is to deter baseless filings and to curb abuses of the judicial system." Bryant v. Joseph Tree Inc., 119 Wn.2d 210, 219, 829 P.2d 1099 (1992). Similarly, the purpose of RCW 4.84.185 is to "discourage frivolous lawsuits and to compensate the targets of such lawsuits for fees and expenses incurred in fighting meritless cases." Biggs v. Vail, 119 Wn.2d 129, 137, 830 P.2d 350 (1992). But the rule "is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Bryant, 119 Wn.2d at 219 (specific to CR 11). "Complaints which are grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law are not [frivolous or] baseless claims." Bryant, 119 Wn.2d at 219-20.

Haley's suit was not frivolous or baseless but instead was a good faith argument for the extension of existing law. The discovery rule is a doctrine of existing law that allows a statute of limitations to be tolled upon certain occurrences. See 1000 Virginia, 158 Wn.2d at 566. Haley made a good faith argument to the trial court that the discovery rule should be extended to statutory warranty deeds. That the trial court ultimately rejected that argument does not mean it was frivolous or baseless. As such, the trial court did not err in denying Hume's motion for attorney fees and costs.

-18-

V.

Finally, Hume requests her attorney fees on appeal pursuant to RAP 18.1, CR 11, and RCW 4.84.185. RAP 18.1 allows this court to award fees "[i]f applicable law grants" such a right. However, since neither CR 11 nor RCW 4.84.185 grant Hume the right to recover her fees, we deny her request.

Haley also requests his fees on appeal pursuant to RAP 18.1, CR 11, and RAP 18.9 for having to respond to Hume's cross appeal. But Hume also made a good faith argument in advancing her concerns about the validity of Haley's suit. Requesting her attorney fees was neither baseless nor frivolous.

We affirm.

Mann, ACJ

WE CONCUR:

Andrus, J.

Leach, J.