

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 27 2017
Fairhurst C.J.
CHIEF JUSTICE

This opinion was filed for record

at 8:00 am on April 27, 2017

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

ZHAOYUN XIA, a single person;            )    No. 92436-8
ISSAQUAH HIGHLANDS 48, LLC,  )
a Washington limited liability               )    EN BANC
company; ISSAQUAH HIGHLANDS )
50, LLC, a Washington limited             )    Filed: ___ APR 27 2017
liability company; GOTTLIEB               )
ISSAQUAH HIGHLANDS 48, LLC,  )
a Washington limited liability               )
company; and GOTTLIEB                     )
ISSAQUAH HIGHLANDS 50, LLC,  )
a Washington limited liability               )
company,                                            )
                                                         )
                         Petitioners,            )
            v.                                          )
                                                         )
PROBUILDERS SPECIALTY             )
INSURANCE COMPANY RRG,          )
a foreign insurance company                )
authorized to conduct business within )
the State of Washington; OLYMPIC   )
ADVANTAGE, INC., a Washington    )
corporation; TREACY DUERFELDT )
and JANE DOE DUERFELDT,           )
husband and wife, and the marital        )
community composed thereof;               )
LAMBIN INSURANCE SERVICES,   )
INC., a Nevada corporation doing        )

business in the State of Washington;   )
FLYING EAGLE INSURANCE          )
SERVICES INC., a Nevada           )
Corporation licensed to do business  )
in the State of Washington; and       )
DAVID W. LAMBIN and JANE       )
DOE LAMBIN, husband and wife,   )
and the marital community composed )
thereof,                                       )
                                                )
                         Respondents.       )
_____ )

YU, J. — This case asks us to clarify the applicability of a broad, absolute insurance pollution exclusion clause to a claim based on negligent installation of a hot water heater that led to the release of toxic levels of carbon monoxide in a residential home. The primary questions are: Does the specific pollution exclusion include the carbon monoxide in this case, and does the exclusion preclude coverage when the cause of the loss was a covered occurrence under a different provision? Answering these questions requires that we reaffirm the importance of examining and understanding the causal chain of events leading to the claimed injury and damage.

When a nonpolluting event that is a covered occurrence causes toxic pollution to be released, resulting in damages, we believe the only principled way for determining whether the damages are covered or not is to undertake an efficient proximate cause analysis. We have long utilized the "efficient proximate cause" rule for determining coverage, and we see no reason why this case should turn on a

2

different analysis. *Allstate Ins. Co. v. Raynor*, 143 Wn.2d 469, 479, 21 P.3d 707 (2001). Under these facts, ProBuilders Specialty Insurance Co. correctly identified the existence of an excluded polluting occurrence under the unambiguous language of its policy. However, it ignored the existence of a covered occurrence— negligent installation—that was the efficient proximate cause of the claimed loss. Accordingly, coverage for this loss existed under the policy, and ProBuilders's refusal to defend its insured was in bad faith. We therefore reverse the decision of the Court of Appeals with regard to the duty to defend and remand the case for further proceedings.

FACTUAL AND PROCEDURAL HISTORY

In May 2006, Zhaoyun "Julia" Xia purchased a new home constructed by Issaquah Highlands 48 LLC. Issaquah Highlands carried a policy of commercial general liability insurance through ProBuilders. Soon after moving into her home, Xia began to feel ill. By December 8, a service technician from Puget Sound Energy investigated Xia's home and discovered that an exhaust vent attached to the hot water heater had not been installed correctly and was discharging carbon monoxide directly into the confines of the basement room.

On June 26, 2007, Xia notified Issaquah Highlands of her injuries and provided details as to how the hot water heater exhaust vent had been discovered. On June 12, 2008, the claims administrator for ProBuilders, NationsBuilders

Insurance Services Inc. (NBIS), mailed a letter to Xia indicating that coverage was not available under the Issaquah Highlands policy. As a basis for its declination of coverage, NBIS rested on two exclusions under the policy: a pollution exclusion and a townhouse exclusion. NBIS refused to either defend or indemnify Issaquah Highlands for Xia's loss.

Xia commenced a lawsuit against Issaquah Highlands and provided a courtesy copy of the summons and complaint to NBIS. ProBuilders (through NBIS) continued to rely on its original denial of coverage and refused to indemnify Issaquah Highlands. Ultimately, Xia entered into a settlement agreement with Issaquah Highlands for stipulated damages in the amount of $2 million. In exchange for a covenant not to execute or enforce the judgment, Issaquah Highlands assigned to Xia all first-party rights, privileges, claims, and causes of action against its insurer, ProBuilders. On June 8, 2011, Xia filed suit against ProBuilders, seeking declaratory judgment with regard to coverage and alleging breach of contract, bad faith, and violations of both the Consumer Protection Act (CPA), chapter 19.86 RCW, and the Insurance Fair Conduct Act (IFCA), RCW 48.30.010-.015.

Following discovery, both Xia and ProBuilders brought cross motions for summary judgment. The trial court entered summary judgment in favor of ProBuilders and dismissed Xia's claims on the basis that the townhouse exclusion

applied. Division One of the Court of Appeals reversed in part, finding that although the townhouse exclusion did not apply, the pollution exclusion did. *Zhaoyun Xia v. ProBuilders Specialty Ins. Co.*, No. 71951-3-I, slip op. at 17-18 (Wash. Ct. App. Aug. 24, 2015) (unpublished), http://www.courts.wa.gov/opinions/pdf/719513.pdf. Accordingly, the Court of Appeals held that ProBuilders did not breach its duty to defend. *Id.* at 34.

We accepted discretionary review to determine whether the pollution exclusion relieved ProBuilders of its duty to defend Issaquah Highlands against Xia's claims and whether this court's opinion in *Quadrant Corp. v. American States Insurance Co.*, 154 Wn.2d 165, 110 P.3d 733 (2005), conflicts with its opinion in *Kent Farms, Inc. v. Zurich Insurance Co.*, 140 Wn.2d 396, 998 P.2d 292 (2000). *Zhaoyun Xia v. ProBuilders Specialty Ins. Co.*, 185 Wn.2d 1024, 369 P.3d 502 (2016).

## ISSUES

A.      Does an insurer breach its duty of good faith by refusing to defend its insured when an alleged prior act of negligence may be the efficient proximate cause of a loss?

B.      Does this court's opinion in *Quadrant* conflict with its opinion in *Kent Farms*?

## ANALYSIS

When reviewing a trial court's decision on a motion for summary judgment, we engage in the same inquiry as the trial court. *Int'l Bhd. of Elec. Workers, Local Union No. 46 v. Trig Elec. Constr. Co.*, 142 Wn.2d 431, 434-35, 13 P.3d 622 (2000), *abrogated on other grounds by W.G. Clark Constr. Co. v. Pac. Nw. Reg'l Council of Carpenters*, 180 Wn.2d 54, 64, 322 P.3d 1207 (2014). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Trig Elec.*, 142 Wn.2d at 435. Interpretation of an insurance contract is a question of law subject to de novo review. *See Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424, 38 P.3d 322 (2002).

## A.   POLLUTION EXCLUSION CLAUSES

The first step in this court's analysis is to review our history of applying pollution exclusion clauses. We have sought to strike a balance between the application of the policy's plain language, the underlying purpose of pollution exclusion clauses, and the expectations of the consumer purchasing insurance. Ultimately, what matters most is whether the occurrence triggering coverage originates from a pollutant acting as a pollutant. *Quadrant*, 154 Wn.2d at 179.

The first notable example is *Cook v. Evanson*, 83 Wn. App. 149, 920 P.2d 1223 (1996). In *Cook*, a contractor applied toxic commercial sealant to the outside of a building yet negligently failed to seal off a fresh air intake, which drew air into

the building. *Id.* at 151. As a result, a number of occupants suffered serious respiratory damage when the fumes entered their work spaces. *Id.* The building occupants filed suit against the contractor and building owners, alleging that defendants "'negligently allowed toxic vapors from the [sealant to] enter the HVAC [(heating, ventilation, and air conditioning)] system.'" *Id.* at 152. After obtaining default judgments, the occupants attempted to enforce the judgments against the insurer. *Id.* In response, the insurer defended on the grounds that its pollution exclusion clause barred coverage under the policy. *Id.* The Court of Appeals held that the pollution exclusion of the contractor's insurance policy applied under the policy's plain language. *Id.* at 154. The commercial sealant clearly fit the definition of a pollutant because the sealant itself was described as a "'[r]espiratory irritant'" and the manufacturer's information expressly warned that use of the product may cause respiratory irritation. *Id.* at 151 (alteration in original).

Two years later, Division Two upheld the *Cook* analytical framework in determining that noxious odors emanating from a toxic waste plant constituted "pollution" under an insurance policy's plain language. *City of Bremerton v. Harbor Ins. Co.*, 92 Wn. App. 17, 963 P.2d 194 (1998). In *Harbor Insurance*, residents filed a complaint against the city of Bremerton for damages when the city's toxic waste plant emitted "'noxious and toxic fumes.'" *Id.* at 19. When the

city's insurance carrier denied coverage as a result of its pollution exclusion, the city filed suit for declaratory judgment. *Id.* at 20. The Court of Appeals held that the policy language was unambiguous and that vapors, fumes, and gases released by the waste plant fell squarely within the insurance policy's pollution exclusion. *Id.* at 22-23. In reaching this decision, the court applied the same plain language analysis as Division One in *Cook. Id.* at 23.

In 2000, this court decided *Kent Farms*. In *Kent Farms*, a fuel delivery driver had just filled a storage tank with diesel fuel and started to remove the delivery hose when a defect in the intake valve caused fuel to backflow over him. 140 Wn.2d at 397-98. While the delivery driver struggled to replace the hose and prevent thousands of gallons of diesel fuel from spilling, the fuel engulfed him and was driven into his eyes, his lungs, and his stomach. *Id.* When the delivery driver sued, Kent Farms sought a declaratory judgment against its insurer, which in turn defended on the basis of a pollution exclusion. *Id.* at 398. The trial court entered summary judgment in favor of the insured, and the Court of Appeals upheld the decision, finding that diesel fuel "'is not a pollutant when used as intended'" and thus the policy's pollution exclusion did not apply. *Id.* (quoting *Kent Farms, Inc. v. Zurich Ins. Co.*, 93 Wn. App. 414, 419-20, 969 P.2d 109 (1998)). This court granted review to determine whether the exclusion applied to a claim not based on environmental damage but on personal injury rooted in negligence. *Id.*

We began our analysis by considering the intent of the parties, which necessarily required an examination of the historical context of pollution exclusions in general. *Id.* at 400. We held that the original intent of pollution exclusions in the insurance context, as well as the intent of the exclusion in the case of *Kent Farms*, was to specifically address those situations in which injury was caused by environmental damage. *Id.* at 401. Further, we noted that the exclusion applied "to 'occurrences' involving the pollutant *as a pollutant.*" *Id.* at 402. Under the facts of *Kent Farms*, the diesel fuel acted not as a pollutant but as a high-pressure jet of liquid that struck, engulfed, and choked the victim—but it did not pollute him. *Id.* at 401.

Five years later, this court decided *Quadrant*. In facts notably similar to those in *Cook*, a tenant in an apartment building became ill from fumes after a restoration company applied sealant to a nearby deck. *Quadrant*, 154 Wn.2d at 167. After settling the claims with the tenants, the owners of the deck sought to apply the coverage of their business liability insurance to the loss. *Id.* The owners argued that the insurer's pollution exclusion applied only to "'traditional environmental harms.'" *Id.* After the trial court granted summary judgment in favor of the insurers and the Court of Appeals affirmed, we granted discretionary review. *Id.* at 170.

9

Relying extensively on the language of *Kent Farms*, we held that the exclusion was designed to preclude coverage in the case of traditional environmental harms or where the pollutant acted as a pollutant. *Id.* at 178. With this in mind, we determined that the facts in *Kent Farms* were distinguishable. *Id.* at 184. Unlike the diesel fuel in *Kent Farms*, the chemical sealant in *Quadrant* was clearly a pollutant acting as a pollutant when, as part of its normal use, it created fumes capable of irritating the respiratory tract and, in high concentrations, causing central nervous system depression. *Id.* at 168, 179 (noting that the sealant was "a substance whose toxicity could cause injury even when used as intended"). The plain language of the pollution exclusion in *Quadrant* anticipated harm from this type of pollutant, stating that liability coverage did not apply to bodily injuries "arising out of the dispersal, seepage, migration, release, or escape of a gaseous irritant, including vapors, fumes and chemicals." *Id.* at 180 (emphasis omitted). Thus, we "distinguished between cases in which the substance at issue was polluting at the time of the injury and cases in which the offending substance's toxic character was not central to the injury." *Id.* at 182.

Xia argues that the opinions in *Kent Farms* and *Quadrant* are in conflict and should be reconciled with a new rule. We disagree. As discussed in *Quadrant*, the facts in *Kent Farms* did not result in a pollutant acting as a pollutant in such a way that would trigger the pollution exclusion. If the diesel fuel in *Kent Farms* had

been replaced with water, for example, the liquid would still have struck, choked, and engulfed the victim just as surely as the diesel fuel—albeit with less severe consequences. As this court noted, the toxic nature of the pollutant was not central to the event that triggered coverage under the insurance policy. *Id.* at 176.

Additionally, *Kent Farms* neither explicitly nor implicitly rejected the reasoning of *Cook* and *Harbor Insurance* as they relate to pollutants acting as pollutants—a fact identified by this court in *Quadrant*. *Id.* at 182. Thus, the choice of analysis under *Kent Farms* versus *Quadrant* and the antecedent "fumes" cases, *Cook* and *Harbor Insurance*, necessarily turns on a determination of whether an occurrence, as defined under the policy, stems from either a traditional environmental harm or a pollutant acting as a pollutant.[1] If the answer to this inquiry is yes, barring any ambiguities in the policy language, courts must apply the plain language of the pollution exclusion to determine whether the exclusion applies to the facts at hand.

Yet even if the court applies the exclusionary language correctly to the facts at hand, the analysis does not end. Courts must next consider whether, pursuant to established Washington insurance law, the excluded occurrence is in fact the efficient proximate cause of the claimed loss.

---

[1] In harmonizing these cases, it is our intent to leave the holding in *Kent Farms* undisturbed.

B.    EFFICIENT PROXIMATE CAUSE AND THE DUTY TO DEFEND

It is well established that we construe insurance policies as contracts, giving them a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 124 Wn.2d 618, 627, 881 P.2d 201 (1994) (quoting *Queen City Farms, Inc. v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 65, 882 P.2d 703 (1994)). "Undefined terms are to be given their plain, ordinary, and popular meaning." *Id.* However, where the policy language is clear and unambiguous, this court will not modify the contract or create ambiguity where none exists. *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 666, 15 P.3d 115 (2000). So long as the defined terms of the contract comport with Washington law, we will apply them as written.

This court has long held that "the duty to defend is different from and broader than the duty to indemnify." *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010) (citing *Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 392, 823 P.2d 499 (1992)). The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could *conceivably* cover allegations in a complaint. *Id.*; *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454 (2007).

12

Accordingly, an insurer must defend a complaint against its insured until it is clear that the claim is not covered. *Am. Best Food*, 168 Wn.2d at 405.

Upon receipt of a complaint against its insured, the insurer is permitted to utilize the "'eight corners'" rule to determine whether, on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage under the policy. *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 803, 329 P.3d 59 (2014); *see also Woo*, 161 Wn.2d at 53. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food*, 168 Wn.2d at 413. An insurer acts in bad faith if the refusal to defend was unreasonable, frivolous, or unfounded. *Id.* at 412. Thus, an insurer takes a great risk when it refuses to defend on the basis that there is no reasonable interpretation of the facts or the law that could result in coverage.

Under Washington law, the rule of efficient proximate cause provides coverage "where a covered peril sets in motion a causal chain[,] the last link of which is an uncovered peril." *Key Tronic Corp.*, 124 Wn.2d at 625. "'If the initial event, the "efficient proximate cause," is a covered peril, then there is coverage under the policy regardless whether subsequent events within the chain, which may be causes-in-fact of the loss, are excluded by the policy.'" *Id.* at 625-26 (quoting *Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 628, 773 P.2d 413 (1989)).

13

We have never before suggested that the rule of efficient proximate cause is limited to any one particular type of insurance policy. Instead, the rule has broad application whenever a covered occurrence under the policy—whatever that may be—is determined to be the efficient proximate cause of the loss. *See, e.g., Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 521, 276 P.3d 300 (2012) (holding that coverage existed where faulty workmanship, a covered peril, combined with an excluded peril as the efficient proximate cause of the loss); *Bowers v. Farmers Ins. Exch.*, 99 Wn. App. 41, 48, 991 P.2d 734 (2000) (holding that coverage existed where tenant vandalism, a covered peril, was the efficient proximate cause of the loss). Like any other covered peril under a general liability insurance policy, an act of negligence may be the efficient proximate cause of a particular loss. Having received valuable premiums for protection against harm caused by negligence, an insurer may not avoid liability merely because an excluded peril resulted from the initial covered peril.

However, the efficient proximate clause rule applies only "when two or more perils combine in sequence to cause a loss and a *covered peril* is the predominant or efficient cause of the loss." *Vision One*, 174 Wn.2d at 519. It is perfectly acceptable for insurers to write exclusions that deny coverage when an excluded occurrence initiates the causal chain and is itself either the sole proximate cause or the efficient proximate cause of the loss. *See, e.g., id.* at 520; *Findlay v.*

*United Pac. Ins. Co.*, 129 Wn.2d 368, 376, 917 P.2d 116 (1996); *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 735, 837 P.2d 1000 (1992); *Hirschmann*, 112 Wn.2d at 631.

This court has repeatedly rejected attempts by insurers to draft language into the exclusion that expressly circumvents the rule. *See Hirschmann*, 112 Wn.2d at 624 (policy language stated, "We do not cover loss caused by . . . excluded perils, whether occurring alone or in any sequence with a covered peril . . ." (emphasis omitted)); *Villella v. Pub. Emps. Mut. Ins. Co.*, 106 Wn.2d 806, 809, 725 P.2d 957 (1986) (policy language stated, "We do not cover loss resulting directly or indirectly from . . . any loss caused by, resulting from, contributed to or aggravated by . . . [excluded perils]"). In so doing, we observed that "[t]his established insurance law principle of proximate cause is the rule in a majority of jurisdictions." *Villella*, 106 Wn.2d at 815. "The rule cannot be circumvented by an exclusionary clause; an exclusionary clause drafted to circumvent the rule will not defeat recovery." *Key Tronic Corp.*, 124 Wn.2d at 626 (citing *Hirschmann*, 112 Wn.2d at 629).

ProBuilders argues that application of the efficient proximate cause rule to this case would conflict with the plain language of the policy. The pollution exclusion under the policy provides as follows:

> Bodily injury, property damage, or personal injury caused by,
> resulting from, attributable to, contributed to, or aggravated by the

actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, or from the presence of, or exposure to, pollution of any form whatsoever, and regardless of the cause of the pollution or pollutants.

This Exclusion applies regardless of the cause of the pollution and whether any other cause of said bodily injury, property damage, or personal injury acted jointly, concurrently, or in any sequence with said pollutants or pollution. This Exclusion applies whether any other cause of the bodily injury, property damage, or personal injury would otherwise be covered under this insurance.

Notwithstanding the provisions of this policy regarding the obligation to defend you, where a suit is based in whole or in part upon bodily injury, personal injury or property damage, liability for which is excluded by this Exclusion, we shall have the right, but not the obligation, to defend said suit. When we do not elect to defend you in such suit, we shall reimburse you for the reasonable attorneys' fees and litigation expenses incurred by you, in accordance with paragraph 15 of Section IV, COMMERCIAL GENERAL LIABILITY CONDITIONS.

Clerk's Papers (CP) at 375 (boldface omitted).

We note that this provision of the policy is markedly similar to the exclusionary language in *Villella* and *Key Tronic Corp.* that constituted an attempt to circumvent the efficient proximate cause rule. The exclusion cannot eviscerate a covered occurrence merely because an uncovered peril appeared later in the causal chain. The efficient proximate cause rule exists to avoid just such a result, ensuring that an insurance policy offering indemnity for a covered peril will provide coverage when a loss is proximately caused by that covered peril. Inasmuch as the causation language in the pollution exclusion here conflicts with

16

established Washington law, it cannot defeat Xia's recovery as assignee of rights under the policy.

With these principles in mind, we now turn to the facts of this case and the language of the applicable insurance policy. By applying the analysis of both *Kent Farms* and *Quadrant*, it is clear that a polluting occurrence happened when the hot water heater spewed forth toxic levels of carbon monoxide into Xia's home. However, by applying the efficient proximate cause rule, it becomes equally clear that the ProBuilders policy provided coverage for this loss. The polluting occurrence here happened only after an initial covered occurrence, which was the negligent installation of a hot water heater that typically does not pollute when used as intended.

C.  THE PROBUILDERS POLICY INDEMNIFIED ISSAQUAH HIGHLANDS FOR XIA'S LOSS

The insurance policy carried by Issaquah Highlands under ProBuilders provides as follows:

> We will pay those sums that an insured becomes legally obligated to pay as tort damages for bodily injury or property damage to which this insurance applies. We will have the right and duty to defend you, the Named Insured, against any suit seeking those damages provided that no other insurance affording a defense against such a suit is available to you. Our duty to defend you is further limited as provided below or in the Section of the policy entitled "EXCLUSIONS: COVERAGES A AND B."

*Id.* at 372 (boldface omitted).

The policy further provides a clause that excludes the following:

> Bodily injury, property damage, or personal injury caused by, resulting from, attributable to, contributed to, or aggravated by the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants, or from the presence of, or exposure to, pollution of any form whatsoever, and regardless of the cause of the pollution or pollutants.

*Id.* at 375 (boldface omitted).

The policy defines "pollutants" and "pollution" in pertinent part as follows:

> Pollutant means any solid, liquid, gaseous or thermal irritants or contaminants, which include but are not limited to smoke, vapor, soot, fumes, acids, alkalis, chemicals, waste, biological elements and agents, and intangibles such as noise, light and visual esthetics, the presence of any or all of which adversely affects human health or welfare, unfavorably alters ecological balances or degrades the vitality of the environment for esthetic, cultural or historical purposes, whether such substances would be or are deemed or thought to be toxic, and whether such substances are naturally occurring or otherwise.

*Id.* at 389 (boldface omitted).

The broad language of the pollution exclusion could easily lead to ambiguity in the case of such defined pollutants as noise and light; however, the substance at issue here is unambiguous. Based on the plain language of the policy, it is clear that the exclusion covers the release of carbon monoxide in this case. Carbon monoxide is a "gaseous . . . vapor" or "fume[ ]" as defined under the policy that, at the levels released in Xia's home, "adversely affect[ed] human health or welfare." *Id.* Furthermore, the process of polluting the air in Xia's home was accomplished

18

by the "dispersal" or "release" of pollutants by the hot water heater. *Id.* at 375.

Unlike the spray of diesel fuel in *Kent Farms*, the carbon monoxide in Xia's house

operated to pollute her air much like the sealant fumes in *Quadrant*. Xia was not

struck by a concentrated stream of carbon monoxide, nor did she trip over a barrel

of the noxious fumes negligently left underfoot. *See Kent Farms*, 140 Wn.2d at

401. ProBuilders did not err in determining that the plain language of its pollution

exclusion applied to the release of carbon monoxide into Xia's home.

Nevertheless, under the "eight corners rule" of reviewing the complaint and

the insurance policy, ProBuilders should have noted that a potential issue of

efficient proximate cause existed. Xia alleged negligence in her original complaint

related to:

> 4.3.1 Failure to properly install venting for the hot water heater; and
> 4.3.2 Failure to properly discover the disconnected venting, and correct the defect[,] before allowing Ms. Xia to occupy the house.

CP at 405.

A jury could reasonably and conceivably view these allegations as separate

steps in the same causal chain, wherein the initial covered peril led to an excluded

peril. The record before the court supports this interpretation. Xia's expert,

Warren F. Harris of CASE Forensics Corp., explained that

> the ability of a gas appliance to produce appreciable levels of CO
> [carbon monoxide] is depend[e]nt [on] the oxygen content of the
> combustion air. Because the exhaust from the water heater was found

to be oxygen deficient, venting this exhaust in the atmosphere of the utility room results in elevated production CO from the water heater and the continued lowering of the oxygen in the air.

*Id.* at 200.

ProBuilders contends that application of the efficient proximate cause rule would defeat the exclusion entirely, arguing that all acts of unintentional pollution begin with negligence. This is not so, and application of the rule may be harmonized with Washington's prior pollution exclusion jurisprudence. In *Cook*, the initial peril that set in motion the causal chain was the polluting event: the application of a chemical sealant. 83 Wn. App. at 151. Up until the point of using the sealant and creating the toxic fumes, no negligent act had occurred. Rather, the negligence in permitting the fumes to migrate occurred after the fumes had been created intentionally. *Id.* ("The contractors did not seal off a six-[ ]by eight-foot fresh air intake, which drew air into the building's HVAC system. [Sealant] fumes entered the building, requiring evacuation."). Similarly, in *Quadrant*, the initial peril that set in motion the causal chain was also the application of a chemical sealant, which was toxic even when used as intended. 154 Wn.2d at 168. There were no covered perils prior to the release of a pollutant acting as a pollutant. As such, application of the efficient proximate cause rule in both cases would have led to the same outcome. And in *Kent Farms*, even assuming, arguendo, that the diesel fuel had been acting as a pollutant, a jury could have found that the efficient

20

proximate cause of the loss was the negligently maintained intake valve that triggered coverage regardless of what spewed forth from the fuel tank. 140 Wn.2d at 402.

If ProBuilders sought to avoid liability for damages resulting from particular acts of negligence, it certainly could have written specific exclusions to that effect—for instance, an exclusion for acts of negligence relating to the installation of home fixtures generally or hot water heaters specifically. *See Findlay*, 129 Wn.2d at 376 ("What we were not allowing in *Hirschmann* was the use of broad policy language which eliminates the relevance of the efficient proximate cause rule under all possible circumstances. We did not forbid the use of clear policy language to exclude a specifically named peril from coverage."). Such an exclusion may have been foreseeable given that this policy was for the construction of a new home, but no such exclusion is found in this insurance policy. Issaquah Highlands paid valuable premiums for an insurance policy providing broad coverage for all forms of negligence *except those acts specifically excluded*, and it was a covered act of negligence that was the efficient proximate cause of Xia's loss.

In sum, the efficient proximate cause rule remains an important part of Washington insurance law. Although we have never before applied the rule to a case with facts such as these, we see no reason to depart from the policies

underpinning the rule's function. The allegations of Xia's complaint provided a reasonable and conceivable basis to believe that the negligent installation of the hot water heater, itself a covered occurrence under the policy provisions, set in motion a causal chain wherein the venting of exhaust lowered the oxygen content of the room such that a normally nonpolluting appliance began discharging toxic levels of carbon monoxide fumes. The record suggests that, prior to declining coverage, neither ProBuilders nor NBIS conducted any investigation into Washington law that might have alerted them to the rule of efficient proximate cause and this court's unwillingness to permit insurers to write around it. Accordingly, ProBuilders wrongfully refused to defend its insured after receiving Xia's complaint.

CONCLUSION

Pollution exclusion clauses are an important tool for insurers to avoid liability stemming from loss caused by pollutants acting as pollutants where the insured has paid no premiums for such coverage. However, emphasis must be given to the phrase "caused by." The efficient proximate cause rule continues to serve the underlying purpose of insurance policies and applies just as effectively to these facts as it has in prior cases. We hold that the efficient proximate cause of Xia's loss was a covered peril: the negligent installation of a hot water heater. Although ProBuilders correctly applied the language of its pollution exclusion to

the release of carbon monoxide in Xia's home, ProBuilders breached its duty to defend in the face of an alleged covered occurrence that was the efficient proximate cause of the loss.

The decision of the Court of Appeals is reversed in part as to the grant of summary judgment in favor of ProBuilders. Xia is entitled to judgment as a matter of law with regard to her breach of contract and bad faith claims. This case is remanded to the trial court for further proceedings regarding damages for Xia's breach of contract and bad faith claims, as well as the remaining questions of material fact relating to Xia's CPA and IFCA claims.

_____

_____

WE CONCUR:

Fairhurst, C.J.

_____

_____

Stephens, J.

Wiggins, J.

González, J.

_____

_____

No. 92436-8

GORDON McCLOUD, J. (concurring in part/dissenting in part)—I agree
with both the majority and the dissent that ProBuilders Specialty Insurance
Company correctly applied the language of its pollution exclusion to the release of
carbon monoxide in Zhaoyun Xia's home. But what result should flow from that is
not completely clear given the tension between our decisions in *Quadrant Corp. v.
American States Insurance Co.*, 154 Wn.2d 165, 110 P.3d 733 (2005), on the one
hand, and *Kent Farms, Inc. v. Zurich Insurance Co.*, 140 Wn.2d 396, 998 P.2d 292
(2000), on the other hand. *Quadrant*, of course, held that an insurance policy's
absolute pollution exclusion barred a claim for personal injuries occurring when
toxic fumes from waterproofing materials applied to the apartment building's
exterior caused injury to a tenant; *Kent Farms* held that an insurance policy's
absolute pollution exclusion did not bar a claim for personal injuries occurring when
diesel fuel backflowed over the diesel fuel delivery truck driver due to a faulty intake

1

valve on a fuel storage tank. *Quadrant*, 154 Wn.2d at 183-84; *Kent Farms*, 140 Wn.2d at 401-03.

I would resolve that tension in part, as the dissent does, because it comports with settled precedent. It explains that the majority in *Quadrant* declined to extend the efficient proximate cause rule to this pollution exclusion situation "and, instead, focused on the fact that the underlying injury and cause of action were primarily the result of the toxic character of the pollutant." Dissent at 3. I agree with the dissent that stare decisis requires us to adhere to that analysis here: "Being faithful to our opinion in *Quadrant* requires us again to decline to extend the efficient proximate cause rule and instead focus on whether Xia's claim falls within the pollution exclusion." *Id.* I therefore agree with the dissent that there was no duty to indemnify in this case.

But I would honestly acknowledge that there is tension between that holding of *Quadrant* and the holding in *Kent Farms*. The pollution exclusions in the two policies were essentially the same, *see Quadrant*, 154 Wn.2d at 192-93 (Chambers, J., dissenting); according to the *Quadrant* dissent, the efficient proximate cause in both cases were essentially the same, *id.* at 187-88; and the law on efficient proximate cause at the time of both decisions was the same; yet the pollution exclusion applied in one case but not in the other. To be sure, the *Quadrant* court

explained the differences in the two situations that caused it to come to a different conclusion from the conclusion reached in *Kent Farms*. *Id.* at 179-83. The fact remains, though, that our court came to two different conclusions in two extremely similar cases. That introduces an element of uncertainty into which case would more likely apply in the present context.

That element of uncertainty means the majority has resolved the duty to defend question correctly. As the majority states, the duty to defend is different from the duty to indemnify. "The duty to indemnify exists only if the insurance policy actually covers the insured's liability, whereas the duty to defend arises when the policy could *conceivably* cover allegations in a complaint." Majority at 12 (citing *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010)). "Accordingly, an insurer must defend a complaint against its insured until it is clear that the claim is not covered." *Id.* at 13 (citing *Am. Best Food*, 168 Wn.2d at 405). The tension between *Quadrant* and *Kent Farms* places the availability of coverage in this case into that category: the insured made a good argument based on *Kent Farms* that the policy could "conceivably" cover the allegations in the complaint in this case. *Id.* at 20-22. I therefore agree with the majority that the insurance company had a duty to defend here.

For the foregoing reasons, I agree with the majority that there was a duty to defend but I agree with the dissent that there was, ultimately, no duty to indemnify.

No. 92436-8

MADSEN, J. (dissenting)—I agree with the majority that ProBuilders Specialty Insurance Company correctly applied the language of its absolute pollution exclusion to the release of carbon monoxide in Zhaoyun Xia's home. But I cannot agree that we should extend the efficient proximate cause rule to this case when a majority of this court implicitly declined to do so in *Quadrant Corp. v. American States Insurance Co.*, 154 Wn.2d 165, 110 P.3d 733 (2005). But even if I were to agree that we should extend the efficient proximate cause rule, we cannot find that ProBuilders acted in bad faith when they failed to anticipate such a change. I would hold that there were no genuine issues of material fact regarding ProBuilders' duty to defend because Xia's claim fell under the absolute pollution exclusion and ProBuilders was thus entitled to judgment as a matter of law. We should affirm the Court of Appeals.

Discussion

1. In accordance with *Quadrant* and the freedom to contract, we should not extend the efficient proximate cause rule to this case

The majority concludes that "it is clear that a polluting occurrence happened when the hot water heater spewed forth toxic levels of carbon monoxide into Xia's home," and that ProBuilders thus correctly applied its absolute pollution exclusion. Majority at 17,

22. I agree. There is simply nothing ambiguous about the broad, absolute pollution exclusion in this case. And, "while exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Quadrant*, 154 Wn.2d at 172 (citing *Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 374, 379, 917 P.2d 116 (1996); *Transcon. Ins. Co. v. Wash. Pub. Utils. Dists.' Util. Sys.*, 111 Wn.2d 452, 457, 760 P.2d 337 (1988)). After concluding that the pollution exclusion applies, however, the majority nonetheless finds that ProBuilders still had a duty to defend because of the efficient proximate cause rule. Unlike the majority, I would not extend[1] the efficient proximate cause rule in this case.

First, I cannot reconcile this extension of the efficient proximate cause rule with this court's ruling in *Quadrant*. In that case, we found that the negligent application of a cement sealer fell under the absolute pollution exclusion. 154 Wn.2d at 167. The fact that the polluting event occurred as a result of negligent application did not impact our analysis because the plain language of the exclusion encompassed the claim at issue. *Id.*

---

[1] Until now, we have applied the efficient proximate cause rule only in first party coverage cases. *See, e.g.*, *Vision One, LLC v. Phila. Indem. Ins. Co.*, 174 Wn.2d 501, 276 P.3d 300 (2012); *Allstate Ins. Co. v. Raynor*, 143 Wn.2d 469, 21 P.3d 707 (2001); *Findlay*, 129 Wn.2d 368; *Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wn.2d 621, 773 P.2d 413 (1989); *Villella v. Pub. Emps. Mut. Ins. Co.*, 106 Wn.2d 806, 725 P.2d 957 (1986). Only in a dissenting opinion have we discussed applying it in a third party coverage case. *Quadrant*, 154 Wn.2d at 187. The policy at issue here is not first party coverage, it is third party "liability" coverage. "First party insurance" is a contract between the insurer and the insured to protect the insured from its own losses and expenses. 14 COUCH ON INSURANCE § 198:3 (2016) (examples are property, fidelity, and health insurance). "Third party insurance" is a contract to protect the insured from losses occurring because of actual or potential liability to a third party. *Id.* (example is liability insurance).

2

Here too, as the majority agrees, Xia's claim falls under the plain language of the absolute pollution exclusion. And the fact that the polluting event occurred as a result of negligent installation should not matter. The dissent in *Quadrant* advocated for us to apply the efficient proximate cause rule and focus on the act of applying the sealant as the efficient proximate cause. *Id.* at 187, 190. But a majority of the court declined to apply the efficient proximate cause rule and, instead, focused on the fact that the underlying injury and cause of action were primarily the result of the toxic character of the pollutant. *See id.* at 179. Being faithful to our opinion in *Quadrant* requires us again to decline to extend the efficient proximate cause rule and instead to focus on whether Xia's claim falls within the pollution exclusion.

Second, under the facts of this case, extending the efficient proximate cause rule would contradict the plain language of the absolute pollution exclusion. We treat insurance policies as contracts. When we construe an insurance contract, we should give it the fair, reasonable, and sensible construction that the average person purchasing insurance would give it. *Tyrrell v. Farmers Ins. Co. of Wash.*, 140 Wn.2d 129, 133, 994 P.2d 833 (2000) (quoting *Roller v. Stonewall Ins. Co.*, 115 Wn.2d 679, 682, 801 P.2d 207 (1990)). "We have repeatedly held that an insurer, as a private contractor, is ordinarily permitted to limit its liability unless to do so would be inconsistent with public policy." *Findlay*, 129 Wn.2d at 379.

Parties have the freedom to draft contracts suitable to their own agreement within the bounds of public policy. In this case, Issaquah Highlands 48 LLC sought the least

3

expensive insurance that would still allow them to obtain a permit and lender for the

project. Clerk's Papers (CP) at 1164. They bargained for these terms. They agreed to

the coverage. And this coverage was all that they paid premiums for. That Issaquah

Highlands did not seek coverage for the type of risk at issue here[2] does not mean we that

should decline to enforce the terms of the insurance contract. This court should not

interfere and hold an insurer responsible for more than the coverage that the insured has

paid for. We should enforce the unambiguous, broad, absolute pollution exclusion as it

was bargained for and written by the parties.

> 2. ProBuilders had no duty to defend, and they did not act in bad faith when they failed to anticipate the majority's expansion of efficient proximate cause

When a policy clearly does not cover a claim, an insurer owes no duty to defend.

*Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53, 164 P.3d 454 (2007). Similarly, if

an insurer correctly denies a duty to defend, there can be no bad faith claim. *United*

*Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 203, 317 P.3d 532 (2014). A bad faith

claim requires the insured show that "the insurer's breach of the insurance contract was

'unreasonable, frivolous, or unfounded.'" *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 484,

78 P.3d 1274 (2003) (quoting *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433, 38 P.3d

322 (2002)). Because I would not extend the efficient proximate cause rule, I would not

find that ProBuilders acted in bad faith when it correctly concluded that the polluting

---

[2] A representative for Issaquah Highlands—who met with the insurance broker—explicitly stated that he "never sought insurance coverage to cover pollution as part of the Issaquah Highlands construction project." CP at 1164.

4

event fell under the absolute pollution exclusion. But even if we were to extend the efficient proximate cause rule, as the majority does, I still cannot agree that we should find that ProBuilders acted in bad faith.

The majority compares the exclusionary language here to that in *Villella v. Public Employees Mutual Insurance Co.*, 106 Wn.2d 806, 725 P.2d 957 (1986), and *Key Tronic Corp., Inc. v. Aetna (CIGNA) Fire Underwriters Insurance Co.*, 124 Wn.2d 618, 881 P.2d 201 (1994), both of which constituted an attempt to circumvent the efficient proximate cause rule. Majority at 16. But in those cases, we had already applied the efficient proximate cause rule to those types of insurance contracts. Here, the majority acknowledges that we have never applied the rule to a case with these facts. Majority at 21. We, in fact, implicitly rejected such an application in *Quadrant*, 154 Wn.2d at 187 (Chambers, J., dissenting). Even if we were to accept that we should extend the rule, it is unfair for us to say that ProBuilders was trying to circumvent a rule that we have never before applied to this type of case. We cannot fairly hold insurers to a standard that requires them to anticipate whether and how the law might change to determine their duties to defend. Therefore, even with the majority's extension of the efficient proximate cause rule, we should still affirm the Court of Appeals because ProBuilders did not act in bad faith when it did not anticipate that we would expand the rule to new facts.

I would hold that there were no genuine issues of material fact regarding ProBuilders' duty to defend under the absolute pollution exclusion because the policy clearly does not cover Xia's claim. And, consistent with *Quadrant* and the freedom to

contract, I would not extend the efficient proximate cause rule to these facts. Therefore, ProBuilders did not act in bad faith when it correctly denied its duty to defend and was entitled to judgment as a matter of law. We should affirm the Court of Appeals.

For those reasons, I respectfully dissent.

Madsen, J.