IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| JOHN WILLIAM WEBB and KRISTA L. WEBB, | No. 52210-1-II |
| Appellants, | |
| v. | PUBLISHED OPINION |
| USAA CASUALTY INSURANCE COMPANY, | |
| Respondent. | |

MAXA, C.J. – John and Krista Webb appeal the trial court's dismissal on summary judgment of a lawsuit they filed against their homeowners insurance company, USAA Casualty Insurance Company (USAA). The Webbs requested a defense from USAA regarding a complaint filed against them by their neighbors. The complaint alleged that John Webb and others (collectively the defendants) shot guns at a target on the Webbs' property, which carelessly and recklessly caused bullets, bullet fragments, or ricocheted projectiles to enter the neighbors' property.

The trial court ruled that USAA had no duty to defend the Webbs against the trespass and nuisance claims asserted in the complaint. The trial court also dismissed the Webbs' claims for bad faith and violation of the Insurance Fair Conduct Act (IFCA), RCW 48.30.015, and the Consumer Protection Act (CPA), chapter 19.86 RCW.

We hold that the trial court erred in granting USAA's summary judgment motion and denying the Webbs' motion for partial summary judgment on the duty to defend because (1) the

trespass and nuisance claims conceivably constituted "personal injury" as defined by the policy's personal injury endorsement, (2) the complaint conceivably requested damages for all claims, including nuisance, (3) the complaint alleged conduct that conceivably constituted an "occurrence" as defined in the policy, (4) the policy exclusion for personal injury "intended or expected by the insured" conceivably did not preclude the duty to defend, and (5) the policy's criminal conduct provision conceivably did not preclude the duty to defend because the complaint did not clearly allege conduct that was criminal in nature.

We also hold that the trial court erred in granting USAA's summary judgment motion and denying the Webbs' motion for partial summary judgment on the Webbs' extracontractual claims because USAA's failure to evaluate the complaint, the policy, and applicable law for whether the policy *conceivably* could cover the allegations made was unreasonable and frivolous. Therefore, as a matter of law USAA's denial of its duty to defend constituted bad faith, violated IFCA, and violated the CPA.

Accordingly, we reverse the trial court's order granting summary judgment in favor of USAA and denying the Webb's motion for partial summary judgment. We remand for entry of partial summary judgment in favor of the Webbs on their duty to defend, bad faith, IFCA, and CPA claims and for further proceedings.

FACTS

*Lawsuit Against the Webbs*

In May 2017, Steven Hogg and Candace Ladley (Hogg/Ladley) filed a complaint in superior court against the Webbs, a person named John Anderson, and 100 unknown defendants. The complaint included the following allegations:

1.6 All of the properties owned by the parties herein are contiguous.
. . . .

3.2 On January 21, 2017, Defendants and each of them . . . carelessly, recklessly, and without regard for human or animal life, caused multiple rounds of ammunition, fragments thereof and or richoteted [*sic*][1] projectiles to be shot and strafed across Plaintiffs' property from the property of Defendants WEBB. Multiple rounds of ammunition, fragments, shrapnel and/or ricocheted projectiles cut through Plaintiffs' trees. A round, fragment, or ricocheted object also landed in the bed of Plaintiffs' pick-up truck. . . . [A visitor] stated that the gun fire sounded like it was on full automatic as it was being shot rapid fire as opposed to single shots. . . .

3.3 . . . The defendants appeared to be shooting at a small target positioned South of WEBB'S residence so that the shots fired were directed southerly, without the benefit of a back stop and/or berm or any safety precautions. Said bullets were either directed at Plaintiff's property or were the result of ricochet.

3.4 Even though the Defendants were advised by Plaintiff HOGG that their careless and reckless conduct endangered others on the Plaintiff's property, the Defendants continued to shoot their guns that day.

3.5 Plaintiffs have requested that Defendants cease their ultra hazardous activity of shooting their guns on Defendants' properties as Plaintiffs fear another incident will occur where Defendants will negligently, carelessly or recklessly fire again onto Plaintiffs' property. . . . But to no avail, Defendants continue to target practice on their properties on a regular basis and refuse to cease to do so.

3.6 . . . [S]heriff's deputies have stated that they have advised the defendants to install a back stop and/or other safety measures to prevent other incidents of rounds, fragments and/or projectiles from entering onto Plaintiffs' property. . . . Defendants have refused, failed and continue to refuse and fail to take any precautions to prevent any further gun fire from entering onto Plaintiffs' property.

Clerk's Papers (CP) at 119-20.

The Hogg/Ladley complaint asserted seven causes of action: (1) trespass, (2) assault, (3) violation of Kitsap County Code (KCC) 10.25.020, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress, (6) nuisance, and (7) injunction. Relevant here, the complaint alleged:

---

[1] Hogg/Ladley presumably meant "ricocheted," and simply misspelled the word. This opinion replaces "richotet" with "ricochet."

4.2 Defendants, and each of them trespassed on Plaintiffs' land, without the consent or authority of the Plaintiffs.

. . . .

6.2 Plaintiffs' real property is within five hundred yards of Defendant WEBB'S property.

6.3 On said date, Defendants discharged their guns in violation of Kitsap County Code 10.25.020 towards Plaintiffs' barn which was occupied by people and domestic animals and which was and is also used for the storage of flammable or combustible hay and other materials.

. . . .

9.2 Defendants, and each of their use of firearms and other deadly weapons on their properties, imminently threaten the physical safety of Plaintiffs on their property so as to essentially interfere with the comfortable enjoyment of Plaintiffs' property, and constitutes a nuisance and should be abated.

CP at 121-23.

The Hogg/Ladley complaint requested a decree requiring the defendants to "compensate Plaintiffs for their actual damages." CP at 123-24. The complaint also requested punitive damages and temporary and permanent injunctions.

*USAA Homeowners Insurance Policy*

USAA issued a homeowners insurance policy to the Webbs that was in effect between August 2016 and August 2017. In the Webbs' policy, the standard liability insurance section was replaced by a "Personal Injury Endorsement." CP at 93-94. The Webbs paid an additional premium for this endorsement.

The personal injury endorsement provided:

If a claim is made or a suit is brought against any "insured" for damages because of "bodily injury", "property damage" or "personal injury" caused by an "occurrence" to which this coverage applies, we will:
. . .
2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.

CP at 93.

4

The endorsement defined "personal injury" to mean several listed offenses, including "wrongful entry" and "[i]nvasion of rights of privacy." And the definition stated, " 'Personal injury' only applies when the conduct is not malicious or criminal in nature." CP at 93.

The endorsement defined "occurrence" as follows:

a. An accident, including continuous or repeated exposure to substantially the same generally harmful conditions, which results, during the policy period, in "bodily injury" or "property damage".

b. An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any "insured", which results, during the policy period, in "personal injury", neither expected nor intended from the standpoint of the "insured".

CP at 93.

The endorsement contained an exclusion for personal injury "which is expected or intended by the 'insured'." CP at 93.

*USAA's Denial of Duty to Defend*

The Webbs notified USAA about the Hogg/Ladley lawsuit. A claims examiner, claims manager, and in house counsel all reviewed the complaint and concluded that USAA did not have a duty to defend under the terms of its policy.

In a June 20, 2017 letter, USAA denied coverage and a duty to defend the Hogg/Ladley complaint. The letter stated:

USAA's review of your policy and the lawsuit has found there is no coverage and no duty to defend under the Homeowners and Umbrella Policies because *some of the allegations* in the complaint do not meet the definition of an occurrence. Intentional acts and Punitive damages are excluded from the policy.

CP at 143 (emphasis added). The letter then referred to the applicable policy forms and quoted several provisions of the policy. The letter provided no further explanation for the denial of the duty to defend.

In September, the Webbs responded and asserted that USAA had wrongfully denied coverage. They pointed out that USAA stated that only some of the claims in the Hogg/Ladley complaint were excluded and that USAA had failed to provide a coherent explanation for its denial of coverage. The Webbs claimed that "USAA has a duty to defend because, as it admitted, at least some of the allegations [in] the complaint were not excluded from coverage." CP at 149. The Webbs also stated that they would be filing a lawsuit against USAA and gave notice of an IFCA claim.

In an October 4, 2017 letter, USAA instructed the Webbs to disregard the prior denial letter and provided an amended denial letter. The letter stated:

> USAA's review of your policy and the allegation in the lawsuit has found there is no coverage and no duty to defend under the Homeowners and Umbrella Policies. The allegations of intentional infliction of emotional distress, negligent infliction of emotional distress and nuisance are intentional acts and excluded from the policy. Punitive damages are excluded from the policy. In addition the following allegations are not covered because they do not meet the definition of an occurrence as outlined in the policy; Trespass, Assault, Violation of Kitsap County Code 10.25.020, Temporary Restraining Order and Permanent Injunction.

CP at 153. The letter again referred to the applicable policy forms and quoted several provisions of the policy. The letter provided no further explanation for the denial of a duty to defend.

*Webbs' Lawsuit Against USAA*

The Webbs filed a lawsuit against USAA, alleging that USAA had breached the insurance policy by refusing to defend the Webbs against the Hogg/Ladley lawsuit. The Webbs also asserted that USAA's denial of its duty to defend them against the Hogg/Ladley lawsuit was a violation of the common law duty of good faith, IFCA, and the CPA. The Webbs requested a declaratory judgment that USAA had a duty to defend them against the Hogg/Ladley lawsuit and had an obligation to pay their future defense costs.

USAA moved for summary judgment, arguing it had no duty to defend the Webbs for a variety of reasons. USAA also argued that the Webbs' bad faith, IFCA, and CPA claims should be dismissed.

The Webbs also moved for partial summary judgment, arguing that the trespass and nuisance claims in the Hogg/Ladley complaint triggered USAA's duty to defend as a matter of law, and that USAA's refusal to defend was in bad faith and violated both IFCA and the CPA as matter of law. Krista Webb submitted a declaration stating that the Webbs had incurred legal fees because of USAA's failure to defend.

The trial court granted USAA's summary judgment motion regarding all the Webbs' claims and denied the Webbs' motion for partial summary judgment. The court stated, "USAA . . . has no duty to defend because the claims against [the Webbs] in the underlying Complaint arise from an intentional act and could not conceivably be covered according to particular provisions within the policy at issue." CP at 565. The Webbs appeal the trial court's summary judgment order.

ANALYSIS

A.     INSURER'S DUTY TO DEFEND

1.     Scope of Duty

Generally, a standard liability insurance policy imposes two distinct duties on the insurer: the duty to defend the insured against lawsuits and the duty to indemnify the insured against settlements or judgments. *United Servs. Auto. Ass'n v. Speed*, 179 Wn. App. 184, 194, 317 P.3d 532 (2014). An insurer's duty to defend is separate from and is broader than its duty to indemnify. *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wn.2d 171, 182, 400 P.3d 1234 (2017). Although the duty to indemnify exists only if an insurance policy actually covers a claim, "the

7

duty to defend arises when the policy could *conceivably* cover allegations in a complaint." *Id.* An insurer's duty to defend is "one of the principal benefits of the liability insurance policy." *Woo v. Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 54, 164 P.3d 454 (2007).

Whether an insurer has a duty to defend a complaint "must be determined from the four corners of the complaint and the four corners of the insurance policy." *Expedia, Inc. v. Steadfast Ins. Co.*, 180 Wn.2d 793, 806, 329 P.3d 59 (2014). An insurer can consider facts outside of the complaint only to find a duty to defend, not to deny a duty to defend. *Id.* at 803-04.

A duty to defend exists if the facts alleged in the complaint against the insured, if proved, would trigger coverage under the policy. *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 398, 404, 229 P.3d 693 (2010). The insurer must analyze the *potential* for coverage. *Woo*, 161 Wn.2d at 52-53. The insurer must defend if "on the face of the complaint and the insurance policy, there is an issue of fact or law that could conceivably result in coverage under the policy." *Xia*, 188 Wn.2d at 182. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food*, 168 Wn.2d at 405.

When reviewing a complaint, we must give the insured the benefit of the doubt in determining the duty to defend, and a duty to defend will be found unless it is clear from the face of the complaint that the policy does not provide coverage. *Woo*, 161 Wn.2d at 64. If the complaint is ambiguous, it must be construed liberally in favor of triggering a duty to defend. *Expedia*, 180 Wn.2d at 803. In addition, any "legal ambiguity" must be resolved in favor of the insured. *Am. Best Food*, 168 Wn.2d at 411. The Supreme Court has expressly rejected the notion that an insurer can deny a duty to defend based on a questionable or equivocal interpretation of the law. *Id.* at 411-13; *Woo*, 161 Wn.2d at 60. An insurer cannot "[rely] on an

equivocal interpretation of case law to give *itself* the benefit of the doubt rather than its insured." *Woo*, 161 Wn.2d at 60.

An insurer's duty to defend applies to any allegation in a complaint that may result in a covered liability, even if other claims in the complaint are clearly outside the scope of coverage. *See Grange Ins. Ass'n v. Roberts*, 179 Wn. App. 739, 752, 320 P.3d 77 (2013) ("The obligation [to defend] encompasses any claim that might be covered under any permissible construction of the policy"). In other words, an insurer has a duty to defend the claims that are conceivably covered even though other claims are not covered.

"[A]n insurer takes a great risk when it refuses to defend on the basis that there is no reasonable interpretation of the facts or the law that could result in coverage." *Xia*, 188 Wn.2d at 182. When the allegations in the complaint or the law affecting coverage are unclear, the insurer's proper course of action is to defend under a reservation of rights. *Am. Best Food*, 168 Wn.2d at 405.

2. Policy Interpretation

We must give the language in insurance policies a fair and reasonable interpretation, considering how an average insurance purchaser would understand that language. *Xia*, 188 Wn.2d at 181. We give undefined terms in insurance policies their plain, ordinary, and popular meaning. *Id.* at 181-82.

However, ambiguous policy language generally will be construed against the insurer and in favor of coverage. *Kut Suen Lui v. Essex Ins. Co.*, 185 Wn.2d 703, 712, 375 P.3d 596 (2016). Policy language is ambiguous "if it is susceptible to two different but reasonable interpretations." *Id.* In addition, exclusionary clauses must be strictly construed against the insurer. *Am. Best Food*, 168 Wn.2d at 406.

3. Standard of Review

We review summary judgment orders de novo. *Speed*, 179 Wn. App. at 193. "Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Xia*, 188 Wn.2d at 177.

Similarly, whether a lawsuit triggers a duty to defend is a question of law that we review de novo. *Speed*, 179 Wn. App. at 194. Generally, there are no questions of fact regarding the duty to defend. *Id.* at 195. Therefore, we "must decide as a matter of law either that the insurer has a duty to defend or that no duty to defend exists." *Id.* at 194.

We interpret insurance policy language as a matter of law, and we review policy construction de novo. *Expedia*, 180 Wn.2d at 802.

B.    DUTY TO DEFEND UNDER PERSONAL INJURY ENDORSEMENT

USAA's personal injury endorsement provides that USAA will defend an insured "[i]f a claim is made or a suit is brought . . . for damages because of . . . 'personal injury' caused by an 'occurrence' to which this coverage applies." CP at 93. The policy excludes coverage for personal injury expected or intended by the insured and states that personal injury exists only when the conduct is not criminal in nature.

The Webbs argue that USAA had a duty to defend the Hogg/Ladley lawsuit because (1) the trespass and nuisance claims alleged "personal injury" as defined in the policy (2) the lawsuit was brought "for damages," (3) the lawsuit alleged an "occurrence" – personal injury neither expected or intended from the standpoint of the insured, (4) the exclusion for personal injury expected or intended by the insured did not apply to the lawsuit allegations, and (5) the criminal conduct provision did not apply to the lawsuit allegations. We agree.

10

1.    Trespass and Nuisance as "Personal Injury"

USAA's personal injury endorsement defines "personal injury" to include the undefined term "wrongful entry."  CP at 93.  The Webbs argue that the Hogg/Ladley claims for trespass and nuisance constitute claims for "wrongful entry."  We agree.[2]

In *Kitsap County v. Allstate Insurance Company*, the court addressed whether an insurer had an obligation to provide liability coverage for trespass and nuisance claims.  136 Wn.2d 567, 571-72, 964 P.2d 1173 (1998).  Several of the policies at issue extended coverage to "personal injury," which was defined to include injury arising out of "wrongful entry."  *Id.* at 573-74.

The court stated that in analyzing personal injury coverage, the focus is on the type of offense alleged – there, trespass and nuisance.  *Id.* at 580.  If trespass and nuisance claims are "analogous" to claims for wrongful entry, there is coverage for trespass and nuisance under the personal injury provisions.  *Id.*  In other words, if the trespass and nuisance claims are "equivalent" to claims for wrongful entry, they are claims for personal injury.  *Id.* at 586.

The court reviewed dictionary definitions and noted that the term "wrongful entry" essentially was synonymous with the word "trespass."  *Id.* at 587.  The court concluded that "an average purchaser of insurance would think that a trespass was a wrongful entry."  *Id.* at 589.  The court also concluded that a nuisance claim was equivalent to a claim for wrongful entry, based on the similarity between trespass and nuisance claims.  *Id.* at 592.

Here, the Hogg/Ladley complaint asserted claims for trespass and nuisance.  Under *Kitsap County*, those claims are the equivalent of "wrongful entry."  *Id*. at 589, 592.  Therefore, the complaint alleges personal injury as defined in the USAA policy.

---

[2] The Webbs also argue that trespass and nuisance constitute the "invasion of rights of privacy," one of the offenses listed in the definition of "personal injury."  CP at 93.  Because we hold that trespass and nuisance constitute "wrongful entry," we need not address this issue.

USAA argues that *Kitsap County* is distinguishable because the policies at issue in that case defined "personal injury" to include injury "arising out of" a list of offenses that included wrongful entry. *Id.* at 573. The USAA policy stated that personal injury "means" a list of enumerated offenses that included wrongful entry. USAA contends that use of the word "means" limits the definition of "personal injury" to the specifically enumerated offenses, and does not include offenses that are merely equivalent to one of those enumerated offenses.

We reject this argument. Nothing in *Kitsap County* suggests that use of the term "arising out of" had any significance in the court's analysis. In any event, a reasonable interpretation of *Kitsap County* is that trespass and nuisance constitute "wrongful entry" for purposes of the definition of personal injury. "[I]f there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend." *Am. Best Food*, 168 Wn.2d at 405. The Supreme Court has rejected the notion that an insurer can refuse to defend based on an " 'equivocal interpretation of case law' " that supports its position. *Id.* at 412 (quoting *Woo*, 161 Wn.2d at 60).

Accordingly, we hold that the trespass and nuisance allegations conceivably allege a "personal injury" as defined in USAA's personal injury endorsement.

2. Suit "For Damages"

USAA's personal injury endorsement provided a duty to defend if a lawsuit was brought against the insured "for damages" because of personal injury. CP at 93. The Webbs argue that the Hogg/Ladley complaint requested damages caused by trespass and nuisance. We agree.

The Hogg/Ladley complaint requested a decree requiring the Webbs to "compensate Plaintiffs for their actual damages." CP at 123-24. Therefore, the lawsuit was brought against the Webbs "for damages."

USAA acknowledges that the trespass claim was brought for damages. However, USAA contends that the nuisance claim was not brought for damages. USAA points out that in asserting the nuisance claim, the Hogg/Ladley complaint stated that the Webbs' conduct constituted a nuisance that "should be abated." CP at 123. USAA states that abatement involves the use of equity, not the award of damages.

However, the Hogg/Ladley complaint did not state that abatement was the *only* remedy requested for the nuisance claim. The complaint requested both actual damages and injunctive relief without specifying which claims related to the different types of relief. Therefore, the complaint is at least ambiguous as to whether the nuisance claim was brought for damages, and this ambiguity must be resolved in favor of triggering a duty to defend. *See Expedia*, 180 Wn.2d at 803.

Accordingly, we hold that both the trespass and nuisance claims conceivably were brought "for damages" as required under USAA's personal injury endorsement.

### 3. "Occurrence" Requirement

USAA's personal injury endorsement provides that USAA will defend a lawsuit brought because of personal injury caused by an "occurrence." CP at 93. The Webbs argue that the Hogg/Ladley complaint alleged that the trespass and nuisance were caused by an "occurrence" as defined in the endorsement. We agree.

#### a. Inapplicability of "Accident" Requirement

USAA argues that the Hogg/Ladley complaint did not allege an "occurrence" because all claims arose from the Webbs' deliberate, nonaccidental shooting of guns. USAA contends that its policy defines "occurrence" as "an accident." CP at 93. USAA then relies on well-settled law that an accident is never present when a deliberate act is performed unless some additional

unexpected happening occurs that causes the injury, regardless of whether the insured expected or intended any injury. *E.g.*, *Speed*, 179 Wn. App. at 198-99.

USAA is correct that *one definition* of "occurrence" in the personal injury endorsement requires an "accident." However, the endorsement also includes a second definition: "An event or series of events, including injurious exposure to conditions, proximately caused by an act or omission of any 'insured', which results, during the policy period, in 'personal injury', neither expected nor intended from the standpoint of the 'insured'." CP at 93. This definition does not require an "accident." The Webbs rely on this second definition, not on the first definition.

In *Queen City Farms, Inc. v. Central National Insurance Company of Omaha*, the Supreme Court expressly rejected the insurers' reliance on cases addressing an "accident" requirement when the issue was whether the insured expected or intended damage. 126 Wn.2d 50, 68, 882 P.2d 703 (1994). "The determination of what constitutes an accident, *i.e.*, whether injury or damage has resulted from an 'accident', is not dispositive on the standard for expectation of the damages." *Id.*

As a result, USAA's argument that the Hogg/Ladley complaint did not allege an "accident' is not conclusive to its duty to defend because of the second definition of "occurrence" in the personal injury endorsement.

b.    Expected/Intended Personal Injury

Under the second definition of "occurrence," the question here is whether the Hogg/Ladley complaint alleged that the trespass and nuisance was "expected or intended" from the Webbs' standpoint. Two principles guide this determination.

First, the question is whether the insured expected or intended personal injury, not whether the insured expected or intended the conduct giving rise to the personal injury. *See*

14

*Woo*, 161 Wn.2d at 65. This principle is dictated by the language of USAA's endorsement, which expressly provides that the *personal injury* – not the insured's conduct – must be neither expected nor intended from the insured's standpoint.

Second, whether an insured expected or intended personal injury is determined using a subjective standard, not an objective standard. *Queen City Farms*, 126 Wn. 2d at 69. In other words, the question is whether the insured subjectively expected or intended the personal injury. *Id.* The language of the USAA endorsement adopts this principle, stating that whether personal injury is expected or intended is based on "the standpoint of the 'insured'." CP at 93.

In *Queen City Farms*, the insured sought insurance coverage for its liability for pollution arising from an industrial waste dump site. 126 Wn.2d at 56-59. The insured allowed various entities to deposit hazardous waste in pits located on its property. *Id.* at 57. The leaking of waste from the pits resulted in groundwater contamination. *Id.* at 56. Certain policies required an occurrence, defined as an event that "unexpectedly and unintentionally results in personal injury." *Id.* at 59-60. The issue presented was whether and when the insured "expected or intended the leakage from the pits into the groundwater"; i.e., whether and when the insured subjectively expected or intended the groundwater contamination. *Id.* at 70. The Supreme Court did not even discuss the fact that the insured clearly expected and intended the initial deposit of hazardous waste on its property.

In *Woo*, the complaint alleged that the insured (an oral surgeon) had taunted the plaintiff (the surgeon's patient and employee) about her potbellied pigs and that he played an offensive practical joke on her by putting boar teeth in her mouth and then taking pictures of her while she was under anesthesia. *Woo*, 161 Wn.2d at 49-50, 65. The surgeon's insurance policy covered personal injury "neither expected nor intended from the standpoint of the insured." *Id.* The

Supreme Court reasoned that, based on the language of the surgeon's policy, he had to have "expected" or "intended" the specific "injury" alleged in the complaint to preclude coverage. *Id.* Because the patient/employee's complaint did not clearly allege that the surgeon expected or intended that his taunts or the practical joke would cause personal injury to her, the surgeon's insurance carrier had a duty to defend him. *Id.*

Here, like the complaint in *Woo*, the Hogg/Ladley complaint did not clearly allege that the Webbs expected or intended that their target shooting would cause a trespass or a nuisance. The complaint alleged that on January 21, 2017, John Webb and others "carelessly, recklessly, and without regard for human or animal life, caused multiple rounds of ammunition, fragments thereof and/or ricocheted projectiles to be shot and strafed across Plaintiffs' property from the property of Defendants WEBB." CP at 119. As a result of the shooting, "[m]ultiple rounds of ammunition, fragments, shrapnel and/or ricocheted projectiles cut through Plaintiffs' trees. A round, fragment, or ricocheted object also landed in the bed of Plaintiffs' pick-up truck." CP at 119. The complaint alleged that the defendants were shooting at a small target without using a backstop, berm, or safety precautions. Finally, the complaint alleged that the "bullets were either directed at Plaintiffs' property or were the result of ricochet." CP at 119.

These allegations did not state that on January 21 the target shooters on the Webbs' property subjectively expected or intended that their shooting would cause personal injury to Hogg/Ladley in the form of trespass or nuisance. The complaint alleged that the target shooters acted carelessly and recklessly, but not that they actually knew that bullets were entering the Hogg/Ladley property. In fact, the complaint expressly states that the bullets may have ricocheted onto the adjoining property. Although the shooting was deliberate, the Webbs must

16

have expected or intended the personal injury – here trespass and/or nuisance – to negate the existence of an occurrence. *See Woo*, 161 Wn.2d at 65.

Accordingly, we hold that the Hogg/Ladley complaint conceivably alleged an "occurrence" with regard to the trespass and nuisance claims under the USAA personal injury endorsement.[3]

4.    Expected/Intended Exclusion

USAA's personal injury endorsement excludes coverage for personal injury "which is expected or intended by the 'insured.'" CP at 93. The Webbs argue that this exclusion does not apply to the allegations in the Hogg/Ladley complaint. We agree.

The language of this exclusion essentially is identical to the pertinent language of the "occurrence" definition. Therefore, the analysis of "expected and intended" in the context of the occurrence requirement applies equally here. As discussed above, with respect to the first incident on January 21, the Hogg/Ladley complaint did not allege that the Webbs expected or intended that trespass or nuisance would result when the defendants conducted target practice on the Webbs' property.

As with its argument on the "occurrence" requirement, USAA claims that the expected/intended exclusion applies if the Webbs' conduct was intentional. USAA repeatedly refers to the exclusion as an "intentional act" exclusion. USAA is wrong. The exclusion says nothing about intentional acts. The policy language makes it clear that the exclusion is for *personal injury* – here, the trespass and nuisance – that the insured expects or intends, not

_____

[3] The Hogg/Ladley complaint alleges that after the initial incident on January 21, the Webbs were informed that bullets were entering the adjoining property but they refused to stop shooting. Arguably, at that point the Webbs expected or intended the trespass and nuisance. However, we need not address this issue because the initial incident conceivably constituted an occurrence.

*conduct* that the insured expects or intends. USAA's argument that the exclusion focuses on the intentionality of the conduct rather than on whether the resulting harm is expected or intended is inconsistent with the plain policy language.

Further, the two gun shooting cases that USAA cites did not even involve an expected/intended exclusion, but focused on whether an event was an "accident" as required in the definition of "occurrence." *See Safeco Ins. Co. of Am. v. Butler*, 118 Wn.2d 383, 400-03, 823 P.2d 499 (1992); *State Farm Fire & Cas. Co. v. Parrella*, 134 Wn. App. 536, 540-41, 141 P.3d 643 (2006). The expected/intended exclusion in USAA's personal injury endorsement does not contain an accident requirement.

Accordingly, we hold that the exclusion for expected and intended personal injury in USAA's personal injury endorsement conceivably does not apply.

5.    Criminal Conduct Provision

The USAA personal injury endorsement stated that personal injury coverage "only applies when the conduct is not malicious or criminal in nature." CP at 93.[4] The Webbs argue that this provision does not apply to the allegations in the Hogg/Ladley complaint. We agree.

"[A] criminal act exclusion does not apply to all acts technically classified as crimes, but only to serious criminal conduct 'done with malicious intent, from evil nature, or with a wrongful disposition to harm or injure other persons or property.' " *Allstate Ins. Co. v. Raynor*, 143 Wn.2d 469, 477, 21 P.3d 707 (2001) (quoting *Van Riper v. Constitutional Gov't League*, 1 Wn.2d 635, 642, 96 P.2d 588 (1939)). "[T]he average [insurance] purchaser would not think

---

[4] USAA refers to this provision as an exclusion. However, it is not identified as an exclusion in the personal injury endorsement. It appears to be part of the definition of personal injury.

'criminal acts' means any and all criminal acts in the technical sense." *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 434, 932 P.2d 1244 (1997) (Madsen, J., concurring).

USAA argues that the criminal conduct provision precludes a duty to defend because the Webbs' conduct as alleged in the Hogg/Ladley complaint violated KCC 10.25.020 and RCW 9.41.230.

First, KCC 10.25.020(2)(c) prohibits the discharge of firearms in the unincorporated areas of the county "[t]owards any building occupied by people or domestic animals . . . where the point of discharge is within five hundred yards of such building." Under KCC 1.12.010, "[a]ny person violating any of the provisions or failing to comply with any of the mandatory requirements of the resolutions or ordinances of Kitsap County is guilty of a misdemeanor."

The Hogg/Ladley complaint contains a cause of action alleging that the Webbs' conduct violated KCC 10.25.020. The criminal conduct provision arguably would preclude coverage for that cause of action.

However, regarding the trespass and nuisance claims, the complaint does not allege acts sufficient to establish a violation of KCC 10.25.020. The complaint alleges that Hogg's property was within 500 yards of the Webbs' property. But KCC 10.25.020 only prohibits shooting if the *point of discharge* is within 500 yards *of an occupied building*. The complaint does not contain any allegations about the distance between the point of discharge and an occupied building. Therefore, it is not clear from the face of the complaint that the criminal conduct provision precludes coverage based on a violation of KCC 10.25.020. The complaint is at least ambiguous in this regard, and that ambiguity must be resolved in favor of a duty to defend. *Expedia*, 180 Wn.2d at 803.

Second, RCW 9.41.230(1) provides that anyone who "[w]illfully discharges any firearm, air gun, or other weapon, or throws any deadly missile in a public place, or in any place where any person might be endangered thereby. . . . is guilty of a gross misdemeanor." RCW 9.41.230(1)(b) specifies that "[a] public place shall not include any location at which firearms are authorized to be lawfully discharged."

The Hogg/Ladley complaint does not allege a violation of RCW 9.41.230, nor does the complaint allege facts sufficient to establish a violation. A violation of RCW 9.41.230 requires "[w]illfully" discharging a firearm, but as stated above, the Hogg/Ladley complaint alleges that the Webbs discharged their guns "carelessly, recklessly, and without regard for human or animal life." CP at 119. A violation of RCW 9.41.230 also requires discharge of a firearm in a public place or a place where a person might be endangered. But the Hogg/Ladley complaint alleges that the Webbs shot their guns on their own property, not in a public place. And whether target shooting on the Webbs' property might endanger other people is a subjective determination that is not necessarily resolved by the complaint allegations.

However, even if the Webbs' conduct as alleged did violate one of these laws, the complaint does not allege that their actions constituted "serious criminal conduct" done with a " 'malicious intent' " or a " 'wrongful disposition' " to harm " 'persons or property.' " *Raynor*, 143 Wn.2d at 477 (quoting *Van Riper*, 1 Wn.2d at 642). On the contrary, the complaint alleges that the Webbs "carelessly" and "recklessly" caused rounds of ammunition, fragments, and ricocheted projectiles to enter Hogg's property. CP at 119. And the complaint does not allege that the Webbs were charged with a crime in relation to these incidents.

USAA does not even acknowledge the Supreme Court's decision in *Raynor*, which is controlling authority regarding a criminal act exclusion. Instead, USAA cites to the Court of

20

Appeals decision in *Raynor* and to the plurality opinion in *Peasley*, 131 Wn.2d at 420. But a majority of the justices in *Peasley* adopted the same rule confirmed in *Raynor* – that criminal act exclusions apply only to serious crimes involving some malicious or wrongful mental state. *Peasley*, 131 Wn.2d at 433 (Madsen, J., concurring), 438 (Johnson, J., dissenting).

Accordingly, we hold that the personal injury endorsement's criminal conduct provision conceivably does not preclude a duty to defend the Hogg/Ladley complaint.

6.    Summary

We conclude that USAA had a duty to defend the Webbs for the trespass and nuisance claims in the Hogg/Ladley complaint because none of the arguments USAA makes to support its refusal to defend the Webbs has merit. Accordingly, we hold that the trial court erred in granting USAA's summary judgment motion and denying the Webbs' motion for partial summary judgment on the Webbs' duty to defend claim.

C.    BAD FAITH CLAIM

The Webbs argue that the trial court erred in granting USAA's summary judgment motion and denying their summary judgment motion regarding their claim that USAA's refusal to defend them was in bad faith. We agree.

1.    Legal Principles

"An insurer acts in bad faith if its breach of the duty to defend was unreasonable, frivolous, or unfounded." *Am. Best Food*, 168 Wn.2d at 412. A breach of the duty to defend does not automatically constitute bad faith. *See id.* at 413 n.5. There is no bad faith where the insurer denies coverage or fails to provide a defense based on a reasonable interpretation of the insurance policy. *Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 777, 58 P.3d 276 (2002).

An insurer is not automatically liable for bad faith if it wrongfully denies a duty to defend. *See Am. Best Food*, 169 Wn.2d at 413 n.5. But in order to avoid bad faith liability for wrongfully denying a duty to defend, an insurer must show that it had a reasonable, nonfrivolous argument that there was no "reasonable interpretation of the facts or the law that could result in coverage." *See id.* at 413. The insurer also must show that it "did not put its own interest ahead of its insured when it denied a defense." *Id.*

An insurer's failure to defend based on a "questionable interpretation of law" or an "arguable interpretation of its own policy" is unreasonable and constitutes bad faith as a matter of law. *Id.* at 413-14.

2. Bad Faith Analysis

USAA raised several grounds for denying the duty to defend. As discussed above, we hold that none of these grounds provide a legitimate basis for denying a duty to defend the Webbs. The question regarding the Webbs' bad faith claim is whether these grounds were "unreasonable, frivolous, or unfounded." *Am. Best Food*, 168 Wn.2d at 412.

USAA's second denial letter only referenced one ground for denying a defense of the trespass claim and one ground for denying a defense of the nuisance claim. But the letter provided no explanation, and did not address the more recently asserted grounds. Therefore, we must look to USAA's appellate briefing to determine the reasonableness of its positions.

a. Trespass and Nuisance as "Personal Injury"

USAA argued that neither trespass nor nuisance falls within the policy definition of "personal injury" because neither was specifically included in the list of offenses that constituted personal injury under the policy definition. However, as discussed above, wrongful entry is included in the policy definition of "personal injury." CP at 93. And in *Kitsap County*, the

Supreme Court unequivocally held that both trespass and nuisance are equivalent to wrongful entry. 136 Wn.2d at 589, 592.

USAA argued that *Kitsap County* can be distinguished based on a difference in the policy language. But even if the argument has some merit, denying a duty to defend despite a controlling Supreme Court case to the contrary is a classic example of an insurer putting "its own interest ahead of its insured" based on a questionable interpretation of case law. *Am. Best Food*, 168 Wn.2d at 413. That constitutes bad faith as a matter of law. *Id.*

Finally, it is worth noting that USAA did not even reference the definition of "personal injury" in either denial letter or in the trial court. Instead, USAA on appeal attempted to assert a new – and meritless – ground for denying a duty to defend that had nothing to do with its initial refusal to defend the Webbs.

Therefore, we conclude that USAA's position regarding the personal injury definition is unreasonable and frivolous and constitutes bad faith as a matter of law.

b.    Suit "for Damages" – Nuisance

USAA argued that the nuisance claim was not asserted "for damages" as required under the personal injury endorsement. This argument was based on an allegation in the complaint that the nuisance should be abated, which is equitable relief. However, as stated above, the complaint specifically requested an award of actual damages and did not limit that request to only certain claims. And the complaint did not state that abatement was the only remedy requested for the nuisance claim.

The complaint was at least ambiguous regarding whether Hogg/Ladley sought damages for the nuisance claim. USAA was required to liberally construe that ambiguity in favor of triggering a duty to defend. *Woo*, 161 Wn.2d at 53. Instead, USAA construed the ambiguity in

23

favor of itself and placed its own interests ahead of its insured's interests. That constitutes bad faith as a matter of law. *See Am. Best Food*, 168 Wn.2d at 413.

Finally, even if USAA's position had been correct on the "for damages" requirement, USAA acknowledged that its position only applied to the nuisance claim. USAA still had an obligation to defend the trespass claim, which clearly was brought "for damages."

Therefore, we conclude that USAA's position regarding the "for damages" requirement is unreasonable and frivolous and constitutes bad faith as a matter of law.

c.    Occurrence Definition

USAA argued that the alleged trespass and nuisance did not did not fall within the policy definition of an "occurrence" because the defendants deliberately fired the guns and therefore there was no "accident." USAA relied on the first definition of "occurrence" in the personal injury endorsement, which requires that an "accident" result in bodily injury or property damage.

However, as discussed above, USAA relied on the wrong definition of "occurrence." The second definition does not require an "accident," and instead requires an "event or series of events" that results in personal injury "neither expected nor intended" by the insured. CP at 93. And regarding the second definition, the Supreme Court in *Queen City Farms* made it clear that "whether injury or damage has resulted from an 'accident', is not dispositive on the standard for expectation of the damages." 126 Wn.2d at 68.

Therefore, we conclude that USAA's position regarding the occurrence definition is unreasonable and frivolous and constitutes bad faith as a matter of law.

d.    Expected/Intended Exclusion

USAA argued that the trespass and nuisance claims are excluded from coverage under an "intentional act" exclusion because the Hogg/Ladley complaint alleged the defendants

24

intentionally shot the guns. However, as discussed above, there is no "intentional act" exclusion; the expected/intended exclusion says nothing about intentional acts. The policy language states that the exclusion applies to *personal injury* that the insured expects or intends, not *conduct* that the insured expects or intends. USAA's argument that the exclusion focuses on the intentionality of the conduct rather than on whether the resulting harm is expected or intended is inconsistent with the plain policy language. Denying a duty to defend based on a questionable interpretation of policy language that gives the insurer rather than the insured the benefit of the doubt constitutes bad faith as a matter of law. *Am. Best Food*, 168 Wn.2d at 413-14.

Further, as discussed above USAA relies on two cases that address an "accident" requirement, not an expected/intended exclusion. *See Butler*, 118 Wn.2d at 400-03; *Parrella*, 134 Wn. App. at 540-41. Denying a duty to defend based on a questionable interpretation of case law constitutes bad faith as a matter of law. *Am. Best Food*, 168 Wn.2d at 413.

Therefore, we conclude that USAA's position regarding the expected/intended exclusion is unreasonable and frivolous and constitutes bad faith as a matter of law.

e.    Criminal Conduct Provision

USAA argued that the criminal conduct provision precluded a duty to defend the trespass and nuisance claims because the Webbs' conduct as alleged in the Hogg/Ladley complaint violated KCC 10.25.020 and RCW 9.41.230. However, as discussed above, the Hogg/Ladley complaint did not clearly allege that the conduct giving rise to the trespass and nuisance claims involved criminal conduct. And the case law is clear that only serious criminal conduct that involves a malicious intent or wrongful disposition to commit harm to persons or property will support the denial of coverage under a criminal conduct provision. *Raynor*, 143 Wn.2d at 477.

The complaint makes no such allegation regarding the initial incident. And USAA did not even acknowledge the Supreme Court's decision in *Raynor* even though it is controlling authority.

Denying a duty to defend based on a questionable interpretation of policy language or case law that gives the insurer rather than the insured the benefit of the doubt constitutes bad faith as a matter of law. *Am. Best Food*, 168 Wn.2d at 413-14. Therefore, we conclude that USAA's position regarding the criminal conduct provision is unreasonable and frivolous and constitutes bad faith as a matter of law.

### f. Summary

When an insurer evaluates whether to defend a lawsuit against its insured, Washington law is clear that the insurer must ask if there is any conceivable way that one or more of the claims asserted in the lawsuit is covered under the applicable policy. *Xia*, 188 Wn.2d at 182. USAA did just the opposite, seemingly asking whether there was any conceivable way that its policy did *not* provide coverage for the Hogg/Ladley complaint.

USAA's disregard of its clear duty to defend the trespass and nuisance claims asserted against its insureds constitutes bad faith as a matter of law. Accordingly, we hold that the trial court erred in granting USAA's summary judgment motion and denying the Webbs' motion for partial summary judgment on the Webbs' bad faith claim.

### D. IFCA CLAIM

The Webbs argue that the trial court erred in granting USAA's summary judgment motion and denying their motion for partial summary judgment regarding their claim that USAA's denial of its duty to defend the Webbs under the personal injury endorsement violated IFCA. We agree.

Under IFCA, a "first party claimant" can recover damages if an insurer "unreasonably denie[s] a claim for coverage or payment of benefits." RCW 48.30.015(1). A "first party claimant" includes an individual "asserting a right to payment as a covered person under an insurance policy." RCW 48.30.015(4). If an insurer acted unreasonably in denying a claim for coverage, the trial court may award up to three times the actual damages and shall award attorney fees to the claimant. RCW 48.30.015(2), (3).

As discussed above, we hold that each of USAA's arguments to support its refusal to defend the Webbs is unreasonable as matter of law. A refusal to defend constitutes a denial of a claim for coverage. Therefore, USAA is liable to the Webbs under IFCA. We hold that the trial court erred in granting USAA's summary judgment motion and denying the Webbs' motion for partial summary judgment on the Webbs' IFCA claim.

E.     CPA CLAIM

The Webbs argue that the trial court erred in granting USAA's summary judgment motion and denying their motion for partial summary judgment regarding their claim that USAA's denial of its duty to defend them violated the CPA. We agree.

The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." RCW 19.86.020. The purposes of the CPA are "to protect the public and foster fair and honest competition." RCW 19.86.920. The CPA must to be liberally construed. RCW 19.86.920.

To prevail on a CPA claim, " 'a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation.' " *Perez-Crisantos v. State*

*Farm Fire & Cas. Co.*, 187 Wn.2d 669, 685, 389 P.3d 476 (2017) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986)).

RCW 48.30.010(1) prohibits unfair practices and deceptive acts for those engaged in the business of insurance. A violation of RCW 48.30.010 is per se an unfair trade practice and satisfies the first element of the five-part test for bringing a CPA action. *Indus. Indem. Co. of the NW, Inc. v. Kallevig*, 114 Wn.2d 907, 920-23, 792 P.2d 520 (1990). Because USAA's arguments supporting its refusal to defend the Webbs were unreasonable and frivolous, the Webbs established the first element of a CPA claim as a matter of law.

The Webbs also presented sufficient evidence of the remaining elements of the CPA claim for summary judgment: (1) the Webbs' interaction with USAA occurred in the insurance trade, (2) the public has an interest in fair insurance practices, (3) the Webbs were injured when they incurred legal fees in defending themselves against the Hogg/Ladley suit, and (4) USAA's denial of the duty to defend was the cause of their injury. USAA does not dispute the existence of these elements. We hold that the trial court erred in granting USAA's summary judgment motion and denying the Webbs' motion for partial summary judgment on the Webbs' CPA claim.

## CONCLUSION

We reverse the trial court's order granting summary judgment in favor of USAA and denying the Webbs' motion for partial summary judgment. We remand for entry of partial

summary judgment in favor of the Webbs on their duty to defend, bad faith, IFCA, and CPA

claims and for further proceedings.

_____
MAXA, C.J.

We concur:

_____
MELNICK, J.

_____
GLASGOW, J.